FORT WAYNE CABLEVISION (formerly known as Citizens Cable of Fort Wayne, Inc.), Third Party Defendant and Third Party Plaintiff/Appellant

v.

INDIANA & MICHIGAN ELECTRIC CO., Defendant and Third Party Plaintiff/Appellee.

No. 3-282A33.

Court of Appeals of Indiana, Third District.

Jan. 6, 1983.

Thomas L. Wooding, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for third party defendant and third party plaintiff/appellant.

Milford M. Miller, Jr., Richard P. Samek, Livingston, Dildine, Hayne & Yoder, Fort Wayne, for defendant and third party plaintiff/appellee.

GARRARD, Judge.

This appeal arises from the trial court's grant of summary judgment in favor of Indiana & Michigan Electric Co. (I & M).

The facts are not disputed. On October 1, 1978 Fort Wayne Cablevision (Cablevision) entered into a written contract with I & M which permitted Cablevision to attach its cable television equipment and lines to I & M's utility poles. The actual attachment of this cable equipment and lines was to be performed by a company known as Barnup & Sims Cable Communications, Inc. (Barnup). On September 26, 1979 Gary A. Montague, an employee of Barnup, was attaching Cablevision's lines to one of I & M's utility poles when the pole broke and he fell to the ground. As a result of his fall, Montague sustained personal injuries. The pole broke because the wood at ground level had rotted through. I & M does not dispute ownership of this pole or its rotted condition.

On May 14, 1980 Montague filed a complaint against I & M alleging that his injuries resulted from I & M's failure to inspect and maintain its utility pole and its failure to warn him of the pole's dangerous condition. I & M impleaded Cablevision as a third party defendant, seeking indemnification under paragraph 10 of its contract, and secured summary judgment to that effect.

On appeal Cablevision contends the summary judgment was improper (1) because as a matter of law the contract did not provide indemnification; (2) because there was a genuine issue of disputed fact concerning causation; and (3) because even if the contract provided for indemnification, it was void and unenforceable as against public policy.

Since the trial court granted I & M's motion for summary judgment on the basis of the indemnification clause in the October 1 contract, we commence by examining the language of the contract. It provides:

"10. Licensee agrees to obtain and maintain at all times during the joint use of poles hereunder comprehensive general liability policies of insurance as follows:

(a) Bodily injury liability insurance for itself in an amount not less than $500,000 for any one occurrence.

(b) Property damage liability insurance for itself in an amount not less than $100,000 for any one occurrence and, subject to the same limit for any one occurrence, in an aggregate amount not less than $250,000.

(c) Contractual liability insurance to cover the liability assumed by the Licensee under the agreement of indemnity herein below set forth.

Licensee hereby agrees to indemnify, hold harmless, and defend Owner from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage or expense of whatsoever kind and nature, including attorneys' fees, which Owner may suffer or incur by reason of bodily injury, including death, to any person or persons, or by reason of damage to or destruction of any property, including the loss of use thereof, arising out of or in any manner connected with the facilities of Licensee to be installed hereunder, or which Owner may sustain or incur in connection with any litigation, investigation, or other expenditures incident thereto, including any suit instituted to enforce the obligation of this agreement of indemnity, whether or not due in whole or in part to any act, omission, or negligence of Owner, or any of its representatives or employees (except insofar as such indemnity arising out of such injury or damage caused by the sole negligence of Owner or such representatives or employees may be found to be contrary to law, in which case this agreement of indemnity shall in all other respects be and remain effective and binding). The amount of such indemnity shall be not less than $500,000 for bodily injury, including death, for any one occurrence, and not less than $100,000 for damage to

or destruction of property, including the loss of use thereof, for any one occurrence and, subject to the same limit for any one occurrence, an aggregate amount not less than $250,000."

In *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143, this court restated the established policies regarding summary judgments:

"The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual dispute and which may be determined as a matter of law. This procedure is an aid in eliminating undue burdens upon litigants and exposing spurious causes. However, the summary judgment procedure must be applied with extreme caution so that a party's right to the fair determination of a genuine issue is not jeopardized; mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant [citation omitted]."

Of the standard of review applicable to a grant of summary judgment, *Jones* said:

"In reviewing a grant of summary judgment, this Court uses the same standard applicable to the trial court. *Richards v. Goerg Boat & Motors, Inc.* (1979), Ind.App., 384 N.E.2d 1084, 1090 (trans. denied). We must reverse the grant of a summary judgment motion if the record discloses an unresolved issue of material fact or an incorrect application of the laws to those facts. *Id.*"

436 N.E.2d at 1143.

Cablevision's first argument is that the trial court committed an error of law in granting I & M's motion for summary judgment because the indemnification clause of paragraph 10 does not cover Montague's injury. In short, Cablevision argues that the scope of paragraph 10 was not intended to include the risk of injury caused by I & M's rotted utility pole. Rather, Cablevision

claims that its duty to indemnify I & M is limited to losses caused by "the facilities of licensee to be installed hereunder." To Cablevision, "facilities of licensee" does not include I & M's pole.[1]

I & M argues that paragraph 10 was intended to have a broad enough scope to include Montague's injury, and it points to two clauses in that paragraph to support its argument. First, I & M notes that according to the indemnification provision, Cablevision agreed to hold I & M harmless for all losses "arising out of or in any manner connected with the facilities of Licensee to be installed hereunder . . . ." Secondly, I & M notes that it is to be indemnified "whether or not due in whole or part to any act, omission, or negligence of Owner . . . ."

■ Two familiar rules of contract construction bear mention.

"It is everywhere agreed that words used in a contract are to be given their usual and common meaning unless, from the entire contract and the subject-matter thereof, it is clear that some other meaning was intended."

*Haworth v. Hubbard* (1942), 220 Ind. 611, 44 N.E.2d 967, 968.

■ Furthermore,

"It is well settled that words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *National Fire Proofing Co. v. Imperishable Silo Co.*, 1916, 63 Ind.App. 183, 112 N.E. 403; *Straus v. Yeager,* 1911, 48 Ind.App. 448, 93 N.E. 877. The entire contract must be read together and given meaning if possible. *Equitable Surety Co. v. Taylor,* 1919, 71 Ind.App. 382, 121 N.E. 283; *Kann v. Brooks,* 1913, 54 Ind.App. 625, 101 N.E. 513; 12 Am.Jur., Contracts, § 241, p. 772."

*Ahlborn v. City of Hammond* (1953), 232 Ind. 12, 111 N.E.2d 70, 73.

1. Appellant points to the introductory clauses of the October 1 contract, which it contends define "attachments":

"WHEREAS, Licensee proposes to furnish community antenna television service in the City of Fort Wayne and desires to attach aerial cables, wires and associated appliances, hereinafter collectively called 'attachments' . . . ."

Applying these rules to the instant facts we agree with the conclusion inherent in the trial court's grant of summary judgment that there is no ambiguity about the intended scope of paragraph 10. Reduced to a more concise form this paragraph provides that:

"Licensee hereby agrees to indemnify ... Owner from and against *any and all actions of whatsoever kind and nature* ... which Owner may suffer or incur ... *arising out of or in any manner connected with* the facilities of Licensee to be installed hereunder ... *whether or not due* in whole or in part *to any* act, omission, or *negligence of Owner* ...." (Emphasis added)

Giving the words "arising out of or in any manner connected with" their usual and common meaning we conclude that the indemnification provision applies to Montague's injury.

In deciding an appeal from the U.S. District Court for the Northern District of Indiana, the Seventh Circuit Court of Appeals in *Indemnity Insurance Co. v. Koontz-Wagner Elec. Co.* (1956), 233 F.2d 380, 382–83 rejected the indemnitor's argument that such phrases as "growing out of the performance of this order," "resulting from or arising in connection with," and "in any manner resulting from, or arising out of" performance of a contract should be given strict or narrow construction. Instead the court used such phrases as evidence that the parties intended the indemnity agreement to provide broad protection. We agree with that assessment.

In the present case, Cablevision's cable television attachments obviously could not function until attached to I & M's poles. The active nature of the process of attachment creates a risk of loss no less significant than that which exists once the attachment is completed. We believe that by the words "arising out of or in any manner connected with" the parties must have intended to cover both kinds of risks. Thus

we conclude that Montague's injuries "arose out of" or were "connected with" the "facilities of Licensee to be installed."

The intended broad scope of this indemnity clause is further supported by other paragraphs in the contract. For example, the language of paragraph 11 indicates in two places that the risk of loss was to be shifted to Cablevision *before* any work was to be done on I & M's poles.[2] Paragraphs 9 (failure or interruption of Cablevision's service) and 14 (failure of Cablevision to secure rights, licenses, permits, or easements) also indicate the extent to which the parties intended to shift risks to Cablevision. Finally, paragraph 3 places on Cablevision the burden of protecting all persons and property against loss due to its attachments.

Cablevision also contends, however, that because I & M drafted the October 1 contract, the terms of the indemnification clause should be construed against I & M. This contention ignores the fact that *a court does not construe the terms of a* contract unless they are ambiguous. *Piskorowski v. Shell Oil Co.* (1980), Ind.App., 403 N.E.2d 838, 846. As the court said in *Tastee-Freez Leasing Corp. v. Milwid* (1977), 173 Ind.App. 675, 365 N.E.2d 1388, 1390:

"The test for determining whether a contract is ambiguous is whether reasonable men would find the contract subject to more than one interpretation. *Bd. of Dir., Ben Davis, etc. v. Cloverleaf Farms, Inc.* (1977), [171] Ind.App. [682], 359 N.E.2d 546 (transfer denied); *Myers v. Maris* (1975), [164] Ind.App. [34], 326 N.E.2d 577."

Because we have already decided, like the trial court, that the Cablevision-I & M contract is not ambiguous we are left with the rule that where the contract is clear "a court does not *construe* the contract, rather it merely *applies* its provisions ...." *Piskorowski, supra,* 403 N.E.2d at 846 (emphasis in original).

---

**2.** We thus find no merit to appellant's argument that the indemnification clause did not

take effect until installation was complete.

Where the terms of a contract are not ambiguous the meaning of that contract is a matter for the court to decide as a question of law. *Piskorowski, supra,* 403 N.E.2d at 844. Further, where the language of a contract is plain as to the intent of the parties, that language is conclusive. *Ft. Wayne Bank Bldg. v. Bank Bldg. & Eq. Corp.* (1974), 160 Ind.App. 26, 309 N.E.2d 464, 468. The trial court did not err in granting summary judgment based on the unambiguous terms of paragraph 10.

Cablevision's second argument is that indemnification clauses that seek to protect the indemnitee from the consequences of his own negligence are subject to a strong presumption of invalidity absent a clear expression that the parties have agreed to such a shifting of risks. It cites three cases, each of which invalidated an indemnity clause purporting to cover the indemnitee's own negligence: *Indiana State Highway Comm. v. Thomas* (1976), 169 Ind.App. 13, 346 N.E.2d 252, 259–60. *Norkus v. General Motors Corp.* (S.D.Ind.1963), 218 F.Supp. 398, 399; *Vernon Fire & Casualty Ins. Co. v. Graham* (1975), 166 Ind.App. 509, 336 N.E.2d 829, 831.[3]

In *Thomas* the court reaffirmed the proposition that:

" 'Contracts which provide indemnification for one's own negligence may if "knowingly and willingly" made, be valid and enforceable in Indiana.' "

346 N.E.2d at 259 (quoting *Graham, supra,* 336 N.E.2d at 831). *See also Weaver v. American Oil Co.* (1972), 257 Ind. 458, 276 N.E.2d 144.[4] The *Thomas* court did state, however, that:

" '[S]uch provisions are strictly construed and will not be held to provide indemnity unless so expressed in "clear and unequivocable" terms.' "

346 N.E.2d at 259 (quoting *Graham, supra,* 336 N.E.2d at 831.)

To meet this "clear and unequivocal" language requirement the *Thomas* court required that the contract contain "an *express* stipulation as to the indemnitee's negligence." 346 N.E.2d at 263 (emphasis in original). We do not feel that the ambiguities that led to the nonenforcement of the indemnity clauses in the cases appellant cites are present here. In the present case it is clear that the indemnity clause operates to limit I & M's liability for loss resulting from its own negligence.

Cablevision contends, however, that we should impose the additional requirement that the *scope* of the indemnity provision must be set out just as clearly as its existence. While there appear to be no Indiana cases speaking directly to this point, we agree that an indemnitor's duty to indemnify is limited by the scope of the indemnity agreement. However, we have already determined in this case that the scope of the indemnity agreement between Cablevision and I & M was sufficiently broad and sufficiently unambiguous to include Montague's injury. Unlike the existence of the indemnity agreement itself which may be precisely and briefly identified, the situations parties intend to cover by their agreement may be wide-ranging and necessarily expressed in more general terms.

The reason courts require self-negligence indemnification clauses to be clear is to insure that the indemnitor is informed

**3.** Cablevision also cited *Carr v. Hoosier Photo Supplies, Inc.* (1981), Ind.App., 422 N.E.2d 1272, *rev'd.* Ind., 441 N.E.2d 450. The Court of Appeals had found the limitation of liability clause involved in the case to be ineffective because there was an ambiguity in the wording of the clause that made it impossible to determine to whom it applied. 422 N.E.2d at 1277. The Supreme Court held that the clause referred to Kodak and included Hoosier by virtue of Hoosier's participation as an agent for Kodak. P. 454. The rule that such clauses are enforceable where the parties clearly assent was reemphasized by the Supreme Court decision.

**4.** The absence of a "knowing and willing" assent, due both to the inconspicuous location of the indemnity clause in the contract and to the great discrepancy in the parties' bargaining positions led the court to refuse to enforce the indemnification clause in *Weaver v. American Oil Co.* (1972), 257 Ind. 458, 276 N.E.2d 144. Neither of those conditions exist in the present case.

about the duty he has assumed. In *Thomas* the court said:

"Our 'judicial policy of disfavor' towards such clauses, *Auto Owners Mutual Ins. Co. v. Northern Indiana Public Service Co.* (7th Cir.1969), 414 F.2d 192, 195, is grounded in the recognition that the obligation to insure another party against the cost of the other's own negligence is 'so extraordinary and harsh . . . ,' *Burford v. Sewerage and Water Bd.* (1937), Orl. La.App., 175 So. 110, 113, with 'the potential liabilities assumed . . . awesome,' *Auto Owners Mutual Ins. Co. v. Northern Ind. Public Service Co., supra,* that a promisor would not lightly accept such a burden knowingly and willingly. Our decision today simply implements that judicial policy."

*Thomas, supra,* 346 N.E.2d at 263. This policy of disfavor is directed at indemnification duties which the indemnitor did not knowingly assume. It does not invalidate such clauses simply because they might provide broad protection for the indemnitee.

In the present case Cablevision and I & M signed a contract containing an indemnity clause phrased in very broad terms. We believe those terms sufficiently identified the scope of Cablevision's duty so that Cablevision should have been aware of the burden it was accepting. The trial court was correct in concluding that the indemnification clause of paragraph 10 was sufficiently clear and unequivocable to be enforceable against Cablevision.

Cablevision's third argument is that the trial court erred as a matter of law or fact in granting I & M's motion for summary judgment.

Indiana cases have long held that:

"The standard for granting a summary judgment is well known: the motion is only to be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

*Donahue v. Watson* (1980), Ind.App., 411 N.E.2d 741, 748; Indiana Rules of Proce-

dure, Trial Rule 56(C). One source of error Cablevision cites concerns the interpretation of the October 1 contract regarding legal responsibility for the cause of Montague's injuries. It contends that a dispute about such responsibility precludes summary judgment. This argument merely restates appellant's argument regarding the scope of the indemnity agreement. The trial court committed no error in interpreting the contract to place responsibility for Montague's injury on Cablevision.

Cablevision also contends that the trial court erred as a matter of law or fact regarding the cause of Montague's injury. Indiana cases hold that:

"The burden is upon the moving party to establish that no material facts are in genuine issue, and any doubt as to the existence of a genuine issue of a material fact must be resolved against the moving party. Accordingly, for purposes of determining whether to grant the motion, facts set forth in the non-moving party's affidavits are taken as true, and products of discovery are liberally construed in his favor. Finally, even if the facts are not in dispute, summary judgment is not appropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. [citations omitted]"

*Hale v. Peabody Coal Co.* (1976), 168 Ind. App. 336, 343 N.E.2d 316, 320. Despite these presumptions, we find Cablevision's argument to be without merit. Montague's complaint alleges no cause for his injuries other than I & M's negligent maintenance of its utility pole, nor has Cablevision supplied us with any other possible theory of causation.[5] The trial court, therefore, did not err in concluding that there was no genuine issue of fact or law regarding the cause of Montague's injury.

■ Cablevision's final argument is that the indemnification clause of paragraph 10 is void because it violates IC 26-2-5-1. This statute provides:

---

5. Appellant simply states in conclusory language that "Reasonable minds could differ as

to whether I & M's rotted pole was the sole cause of Montague's injuries."

"All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract except those pertaining to highway contracts, which purport to indemnify the promisee against liability for:

(1) death or bodily injury to persons;

(2) injury to property;

(3) design defects; or

(4) any other loss, damage, or expense arising under either (1), (2) or (3);

from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, are against public policy and are void and unenforceable."

Cablevision claims that its contract with I & M to attach cable television lines on I & M's utility poles is either a construction or design contract or is at least collateral to or affects such a contract and thus comes within the terms of the statute.[6] I & M claims that the contract is a licensing agreement and thus the statute's prohibition is not applicable. Both parties agree that this is a case of first impression regarding the scope of IC 26-2-5-1.

There is no helpful legislative history and very little scholarly commentary[7] to aid us in interpreting the intended scope of this statute. Even so, we believe for several reasons that the trial court was correct in ruling that IC 26-2-5-1 is not applicable to the present indemnity agreement. First, although we recognize that labels will not control over substance, the present contract consistently refers to appellant as a licensee. In *Selvia v. Reitmeyer* (1973), 156 Ind.App. 203, 295 N.E.2d 869, 872 the court defined a license in real property as:

"[A] *personal, revocable,* and *unassignable* privilege to do one or more acts on the land of another without possessing an interest therein. 25 AM.JUR.2D, *Easements and Licenses,* § 123, at 525."

BLACK'S LAW DICTIONARY (4th ed.) defines a license as "permission, by a competent authority to do some act which without such authorization would be illegal, or would be a trespass or a tort." These characterizations reflect the realities of the present contract whereas it requires strained usage and interpretation in order to consider it to be a construction contract. Our conclusion is also consistent with the rule of statutory construction which provides that in construing a statute it is the duty of a court to give effect to the plain and ordinary meaning of the language used. *State ex rel. Bynum v. LaPorte Superior Court No. 1* (1973), 259 Ind. 647, 291 N.E.2d 355.

Secondly, we believe the Cablevision-I & M contract was not the kind the legislature intended to regulate by IC 26-2-5-1. Support for this decision is less than conclusive, but still we believe it adequate. For example Dean Bepko has written:

"In an effort to protect construction contractors against the pernicious effects of these clauses, the 1975 Indiana General Assembly enacted a law declaring broad hold harmless clauses to be 'against public policy' and 'void and unenforceable.' The new law does not, however, apply to contracts made before July 1, 1975. [footnotes omitted]."

Bepko, *Contracts and Commercial Law,* 1975 Survey of Indiana Law, 9 IND.L.REV. 132, 137.

He explains the reason for the statute:

"If the general contractor negligently injures an employee of the subcontractor, and the injured employee sues the general contractor, the general contractor may invoke the broad hold harmless clause and shift the liability. Being thus forced into the role of an insurer can have a pernicious effect on the promisor, especially if the promisor's business insurance

---

6. Cablevision specifically disclaims any theory that would attempt to fit the present contract within the highway contract exception of this statute or within the dangerous instrumentality exception of IC 26-2-5-2.

7. *See* Bepko, *Contracts and Commercial Law,* 1976 Survey of Indiana Law, 10 IND.L.REV. 151, 171 (1976); Bepko, *Contracts and Commercial Law,* 1975 Survey of Indiana Law, 9 IND.L.REV. 132, 136.

does not cover contract liability. [footnote omitted]."

9 IND.L.REV. at 137.

Similarly the annotation at 68 A.L.R.3D 7 also analyzes indemnity agreements in the contractor-subcontractor context.

Like the parties to this case we are unable to find any Indiana cases to aid us in deciding whether the present contract is within the scope of IC 26–2–5–1. We are aided somewhat by cases dealing with a similar Illinois statute.[8]

The Illinois statute provides:

"61. Indemnification of person from person's own negligence—Effect—Enforcement

§ 1. With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable."

Two cases shed some light on the types of contracts to which this statute is to apply. In *Davis v. Commonwealth Edison Co.* (1975), 61 Ill.2d 494, 336 N.E.2d 881, 884, the Supreme Court of Illinois said in upholding the distinction made in the statute between construction and non-construction contracts:

"We consider there are sufficient differences between the industry affected, which we may generally describe as the construction industry, and others to form a reasonable basis for the classification.

Work in the construction industry is often hazardous and if it is not performed with proper safeguards and precautions, workers (*Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 322, 211 N.E.2d 247) and members of the general public as well are exposed to danger of injury. It is not inappropriate to observe that the Structural Work Act (Ill.Rev.Stat.1973, ch. 48, pars. 60 through 69) was enacted to protect those engaged in particularly hazardous construction work and to lessen the extent of the dangers in such work. (*Halberstadt v. Harris Trust & Savings Bank*, 55 Ill.2d 121, 127, 302 N.E.2d 64; *Kobus v. Formfit Co.*, 35 Ill.2d 533, 537, 221 N.E.2d 633.) It has been held that the Act, which is applicable to construction activities, is based on a valid classification (*Claffy v. Chicago Dock and Canal Co.*, 249 Ill. 210, 94 N.E. 551), and a liberal construction of the Act has been adopted to meet the legislative aim of protecting the construction worker. *McNellis v. Combustion Engineering, Inc.*, 58 Ill.2d 146, 151, 317 N.E.2d 573; *Crafton v. Lester B. Knight & Associates, Inc.*, 46 Ill.2d 533, 537, 263 N.E.2d 817.

It is generally known that indemnity and hold-harmless agreements are most widely used in the construction industry. The legislature in enacting section 1 may have considered that the widespread use of these agreements in the industry may have removed or reduced the incentives to protect workers and others from injury. (*See* Prosser, *Handbook of the Law of Torts* sec. 4 (4th ed. 1971).) For example, persons having 'charge of the work' and, thus, persons liable for violations of the Structural Work Act are able to escape the consequences of this liability by requiring indemnifying agreements from, let us say, general contractors or subcontractors. Having arranged the avoidance of the burdens of liability they no longer have the same motivation 'to lessen the extent of the danger' (*Halberstadt v. Harris Trust & Savings Bank*, 55 Ill.2d 121, 127, 302 N.E.2d 64, 67) to the prejudice of the worker's safety and interest. Too, the members of the general public protected from dangers presented by, for

---

8. Four states appear to have such statutes. *See* Calif.Civ.Code Annot., § 2782 (West 1974); Ill.Annot.Stat., ch. 29 § 61 (Smith-Hurd 1982–83); Mich.Comp.Laws § 691.991 (West 1982–83); N.Y.Gen.Oblig.Law § 5–324 (McKinney's 1978). We have, however, only found cases construing the Illinois statute.

example, the improper design, construction and maintenance of buildings would be obviously affected adversely if those charged with responsibility were able to avoid the consequences of liability through indemnity agreements. Viewed in this light, we consider that section 1 of the indemnity statute serves to protect workers in the industry and the public as well from dangers associated with construction work. The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions."

In *Rutter v. Arlington Park Jockey Club* (1975), 510 F.2d 1065, 1069, the Seventh Circuit refused to apply the Illinois statute to an indemnification provision covering losses due to a negligently caused fire that killed plaintiff's horses. The court said:

"Where the legislature has wanted to invalidate exculpatory clauses in particular kinds of contracts it has done so. In 1971, for example, statutes were enacted declaring void as against public policy exculpatory clauses in leases, Ill.Rev.Stat. ch. 80, § 91 (1973), and in construction contracts, Ill.Rev.Stat. ch. 29, § 61 et seq. (1973). In circumstances not covered by such statutes, Illinois courts have declined to find exculpatory clauses to be violative of public policy. *See, e.g., Morrow v. Auto Championship Racing Association, Inc.,* 8 Ill.App.3d 682, 685–686, 291 N.E.2d 30, 33 (1972) (stock car racing); *Erickson v. Wagon Wheel Enterprises, Inc.,* 101 Ill.App.2d 296, 301, 242 N.E.2d 622, 625 (1968) (horsebackriding); *Owen v. Vic Tanny's Enterprises,* 48 Ill.App.2d 344, 348, 199 N.E.2d 280, 282 (1964) (gymnasium)."

We do not believe that Cablevision's proposed construction of the contract is necessary to the policy interests expressed in either Dean Bepko's article or *Davis.* Further, we believe that Cablevision's contract to use I & M's utility poles is like the contracts cited in *Rutter* and is beyond the scope of the statutory prohibition. For all these reasons we conclude that IC 26–2–5–1 was not intended to apply to licensing agreements like the one in the present case, and thus the trial court was correct in refusing to void paragraph 10.

The trial court's decision is affirmed.

HOFFMAN, P.J., and STATON, J., concur.