## SOUTHERN INDIANA GAS AND ELECTRIC COMPANY

v.

## PSI, INC.

### No. EV 88-5-C.

United States District Court, S.D. Indiana, Evansville Division.

May 8, 1989.

Robert H. Hahn, Evansville, Ind., for plaintiff.

Johnson, Carroll & Griffith, Evansville, Ind., James E. Keller, Omaha, Neb., for defendant.

## MEMORANDUM

BROOKS, Chief Judge.

Plaintiff brought this action alleging that defendant breached its contract to provide natural gas to plaintiff by defendant's failure to deliver a certain amount by the dates requested.

Defendant asserts the terms of the contract impose no obligation to deliver any minimum amount. Alternatively, defendant argues that summary judgment should be granted in its favor because any failure to deliver resulted from circumstances beyond its control, which failures it asserts are excused by the provisions of the written agreement of the parties.

This Court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1332 since plaintiff and defendant are citizens of different states and the amount in controversy exceeds $10,000, exclusive of interest and costs.

### Statement of Facts

The relevant facts are not in dispute. Plaintiff Southern Indiana Gas and Electric Company (hereafter "SIGECO") is a utility company which, as part of its business, purchases natural gas for its own use and for distribution to its commercial and residential customers. Defendant PSI, Inc. (hereafter "PSI") is engaged in the business of buying and selling natural gas.

On or about September 1, 1987, SIGECO and PSI entered into a "Gas Sales Agreement". The agreement provided for the periodic execution of purchase orders between the parties. The purchase orders would specify the quantities of natural gas to be delivered, the delivery points, and price per unit.

In October, 1987, SIGECO's supervisor of Gas Sales and Procurement advised PSI of SIGECO's intention to nominate a certain amount of units under the contract. A

"nomination" is a communication from buyer to seller of the "monthly and average daily requirement of gas that buyer wishes to take under the terms of the Purchase Order and this Agreement." (Gas Sales Agreement, ¶ 7.1) At that point, a PSI marketing representative indicated that PSI would not deliver. (Affidavit of Head[1], ¶ 12; Affidavit of Wohl, ¶ 9)

SIGECO, by letter dated November 30, 1987, demanded that PSI make delivery of natural gas. (Exhibit K, Brief in Opposition to Defendant's Motion for Summary Judgment) PSI did not deliver any gas during the period of November, 1987, to, and including, February, 1988. In March, 1988, PSI delivered and SIGECO accepted, a certain amount of natural gas.

SIGECO filed this action January 27, 1988, seeking damages for cover for the period of November, 1987 through March, 1988.

### Discussion

A party is entitled to summary judgment in an action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The only genuine issue which plaintiff asserts goes to the intent of the parties. (Plaintiff's Statement of Genuine Issues)

To avoid summary judgment, the issue of the intent of the parties must be a "material" issue. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court stated that "substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510. Indiana contract law makes clear that however genuine the issue of the intentions of the parties may be, it is not material to our inquiry. *See, e.g., THQ Venture v. SW, Inc.*, 444 N.E.2d 335 (Ind.App.1983). Where the language of the contract is unambiguous, it is conclu-

sive upon the question of the parties' intentions. *Id.* at 338. *See also Fort Wayne Cablevision v. Indiana & Michigan Electric Co.*, 443 N.E.2d 863 (Ind.App.1983). ("This contention ignores the fact that a Court does not construe the terms of a contract unless they are ambiguous." *Id.* at 866.) The Indiana Court of Appeals in *Fort Wayne Cablevision* stated the "test for determining whether a contract is ambiguous [to be] whether reasonable men would find the contract subject to more than one interpretation. (Citations omitted.)" 443 N.E.2d at 866.

■ The term in the written agreement which is at the heart of our inquiry is paragraph 3.1. The entire paragraph is set out below:

> 3.1 Quantity. Subject to the terms and conditions herein, Seller agrees to sell and deliver to Buyer and Buyer agrees to purchase and accept at the Delivery Point(s), as described below, such quantities of gas as may from time to time be agreed upon and set forth in a Purchase Order. Nothing herein shall be construed to impose upon either party an obligation to deliver or to purchase any minimum quantities of natural gas.

(Emphasis supplied.)

The language underlined above is subject to only one interpretation by a reasonable person—the contract does not impose, nor should any terms therein be read to impose, an obligation to deliver any minimum quantities of natural gas.

Plaintiff asserts that the purchase orders impose just such an obligation. If that were true, an ambiguity would arise in the contract since the purchase orders are to be considered as though they were in the body of the agreement. *See* Gas Sales Agreement, ¶ 1.2. The purchase orders, however, state the quantity to be delivered using the phrase "up to". Not only is this language consistent with an interpretation imposing no minimum delivery requirement, it is inconsistent with a reading

---

1. Defendant filed a Motion to Strike the Affidavit of Mark Head on October 21, 1988. Inasmuch as the Court relied on only the above paragraph in reaching its decision, and that paragraph *was* made on personal knowledge, the Motion to Strike has been denied.

which would call for some minimum delivery. Again, the Indiana Court of Appeals guides us stating that a contract's terms must be read together and given meaning if possible. *Fort Wayne Cablevision*, 443 N.E.2d at 865. The only way in which these two terms may be read together and given meaning is by reading both of them as imposing no minimum delivery requirement.

The only other potential for ambiguity is found by a consideration of paragraph 8.2 of the appendix to the agreement. The language of that paragraph can be construed to establish that PSI may be liable to SIGECO if, after nomination by SIGECO, PSI fails to comply with the nomination by not delivering the nominated quantity of gas. The facts here make clear, however, that at worst, PSI failed to comply only with an attempted nomination. PSI informed SIGECO immediately upon the attempt to nominate that there would be no delivery at those prices, thus preventing agreement. (Affidavit of Head, ¶ 12)

This language appears in the appendix to the Gas Sales Agreement. Paragraph 10.1 specifically provides that in the event of any conflict of terms set out in the body of the agreement, and those set out in the appendix, the terms in the body of the agreement "shall control". Because of this paragraph, the Court concludes that the language in paragraph 3.1, which is in the body, must control and is unambiguous. That language provides explicitly that nothing in the agreement shall be construed to impose a delivery obligation.

It is clear from the attachments to the motion for summary judgment that the market for the purchase and sale of natural gas is a volatile one. By entering into this agreement, SIGECO assured itself of being able to obtain an additional quantity of gas at a reasonable price, if it needed such quantities and if the market price was right. The benefit to SIGECO of this contract was that it could determine not to pay for any gas at all if its needs were being filled at a lower cost from a different source. By entering into this agreement, PSI obtained the benefit of a reliable purchaser of gas at a particular price; if its supply of gas was available at a favorable rate. By this agreement, it could make a profit on such a sale, without being obligated to make a particular sale if the market price of gas fluctuated to an extent that the transaction was not profitable. Although it is difficult to grasp the rationale for entering into such an "agreement to agree", the Court is convinced that the language of the agreement is unambiguous.

■ Given the clear language of the contract imposing no minimum delivery requirement on defendant, Indiana law prevents our looking any further at the negotiations between the parties which led to the agreement. *Williams v. National Can Corp.*, 603 F.Supp. 1268, 1273 (N.D.Ind. 1985) (applying Indiana law); *Fort Wayne Cablevision*, 443 N.E.2d at 866. Although plaintiff provided the Court with a great amount of extrinsic evidence of the intentions of the parties, we are prohibited by Indiana law from looking any further than the unambiguous agreement.

Since there are no genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), and since the law is with defendant and against plaintiff, the motion for summary judgment of defendant PSI is hereby granted and this case is dismissed with prejudice.

IT IS SO ORDERED.