LTV STEEL COMPANY, INC., Plaintiff,

v.

NORTHWEST ENGINEERING & CONSTRUCTION, INC. and J. Hilding Johnson, Division of Northwest Engineering and Construction, Inc., Defendants.

No. 2:92 cv 355.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 24, 1994.

Terrance L. Smith, Smith and Debonis, East Chicago, IN, for plaintiff.

Robert P. Forszt, Fred M Stults, Jr., Stults Custer and Kutansky, Gary, IN, for defendants.

### ORDER

MOODY, District Judge.

This matter is before the court on cross-motions for summary judgment addressing the same issue, the validity of an indemnity clause in the parties' contract for "general maintenance repairs." The suit was brought by LTV Steel Company, Inc. ["LTV"], the indemnitee, to enforce the clause. Defendants Northwest Engineering & Construction, Inc. and its division J. Hilding Johnson [collectively, "Northwest"], contend that an Indiana statute voids the clause. The parties agree that no material facts are in dispute. As explained below, LTV's motion for partial summary judgment is to be denied and Northwest's motion is to be granted.

### I. Background

LTV is an Ohio corporation doing business in the state of Indiana; Northwest is an Indiana corporation. On May 17, 1990, LTV and Northwest contracted for Northwest to provide labor, materials, supervision, and equipment for "general maintenance repairs" at LTV's Indiana Harbor Works as directed from time-to-time by LTV's maintenance staff. The present dispute arises from a contract clause which provides:

Personal Injury, Death and Property Damage.—By its acceptance of this order, Seller [Northwest] expressly agrees to defend, indemnify and save harmless Buyer [LTV] . . . from and against any and all liability, loss, damages, costs and expenses (including attorneys' fees), claims, suits, and demands for any loss or damage to property or injuries to persons, including death, sustained by Buyer, its employees or its cus-

tomers, or by Seller or its employees, or by any other party, arising out of the performance of any work or the furnishing of or claimed defects in, any goods furnished by Seller under this order. Seller further expressly agrees that it is the intent hereof that Seller shall assume all risk of such loss, damage or injuries, and shall absolve and **indemnify Buyer therefrom whether or not such loss, damages, or injuries are due to the sole** or joint **negligence of Buyer or its employees.**

(Emphasis added). The parties agree that the language in bold face calls for Northwest to indemnify LTV for LTV's sole negligence.

On May 22, 1990, LTV's maintenance staff asked Northwest to remove and replace wearplates in the coal hopper of a blast furnace at LTV's plant. On May 23, 1990, Northwest sent a crew of ironworkers to perform this task; a member of this crew was Edward J. Ellch. While welding in the coal hopper, Ellch was overcome either by fumes or oxygen deprivation, became unconscious, fell ten to twelve feet and suffered injuries. On August 6, 1990, Ellch filed suit in this court against LTV for his damages resulting from the accident.

On July 24 and August 16, 1991, LTV requested that Northwest abide by the contract and defend Ellch's suit; Northwest steadfastly refused. Eventually LTV settled with Ellch for $72,500.00 in an agreement that denied any liability on the part of LTV. On October 27, 1992, LTV filed the complaint that began this case against Northwest, seeking enforcement of the indemnification clause and attendant reimbursement of the cost of the settlement and its attorney's fees.

On March 23, 1993, Northwest answered with the affirmative defense that the indemnification clause is voided by § 26-2-5-1 of the Indiana Code, which provides, in relevant part, that "[a]ll provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract . . . which purport to indemnify the promisee against liability for: (1) death or bodily injury to persons . . . from the sole negligence or willful misconduct of the promisee . . . are against public policy and are

void and unenforceable." Ind.Code Ann. § 26–2–5–1 (West 1980 & Supp.1993).

LTV moved for partial summary judgment on August 12, 1993, and Northwest moved for summary judgment on September 14, 1993. The parties agree that § 26–2–5–1 (hereafter, referred to as the "Construction Indemnity" statute) voids self-indemnification agreements only in "construction" contracts. The sole issue raised by the parties' cross-motions is whether the contract between LTV and Northwest for "general maintenance repairs" is a construction contract within the purview of the statute. LTV seeks partial summary judgment on that issue, leaving LTV to prove the remainder of its case if its motion is granted. Northwest seeks a summary judgment ending the litigation, because if the contract is a construction contract, the statute voids the indemnity clause and Northwest has a complete defense.

## II. Analysis

■ Jurisdiction exists in this court under the diversity statute, 28 U.S.C. § 1332, in that LTV is not a citizen of Indiana, Northwest is a citizen of Indiana, and the amount in controversy exceeds $50,000.00. Indiana law governs this dispute because in diversity cases the substantive law of the forum state presumptively governs when the parties do not raise a choice of law question. *Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 421 (7th Cir.1987). Moreover, by arguing whether the Indiana Code voids the indemnification provision here, the parties affirmatively admit that Indiana law applies.

### A. Summary Judgment

Summary judgment must be granted "forthwith" if the pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At the summary judgment stage the trial court's function is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, the summary judgment inquiry addresses "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. The trial court "should 'neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues when there are none." *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir. 1987), *cert. denied sub nom.,* 488 U.S. 898, 109 S.Ct. 243, 102 L.Ed.2d 232 (1988) (quoting *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 498 (7th Cir.1972)).

■ A contractual dispute can be resolved by the summary judgment method only when an unambiguous contract can be applied to undisputed facts. *Old Republic Ins. Co. v. Federal Crop Ins. Corp.,* 947 F.2d 269, 274 (7th Cir.1991); *but see LaSalle Nat. Bank v. General Mills Restaurant Group., Inc.,* 854 F.2d 1050, 1052 (7th Cir.1988) (ambiguous contract may be interpreted on summary judgment if no material facts are in dispute); *see also National Diamond Syndicate, Inc. v. United Parcel Service, Inc.,* 897 F.2d 253, 256 (7th Cir.1990) (discussing Illinois law). The court looks to state law to determine whether an ambiguity exists. *See id.* Under Indiana law, if extrinsic evidence is not necessary to interpret the contract, it is unambiguous and summary judgment may issue. *Southbend Escan Corp. v. Federal Ins. Co.,* 647 F.Supp. 962, 966 (N.D.Ind.1986) (applying Indiana law); *see also Peterson v. Universal Fire & Cas. Co.,* 572 N.E.2d 1309, 1310 (Ind.Ct.App.1991).

Pursuant to local rule, both parties have filed statements of the facts they believe are undisputed. These statements are nearly identical: the parties have no disagreement as to the facts underlying the contract dispute, i.e. the circumstances of Ellch's accident for which LTV seeks indemnification, and Northwest's refusal to indemnify LTV. Thus, it becomes apparent that, while the parties frame the dispute as involving interpretation of the contract,[1] that misperceives

---

1. Both parties support their analysis with canons

of contract construction, which are used only in

the nature of the controversy. Their disagreement is over the interpretation of the term "construction" in the Construction Indemnity statute.

■ As a result, the question before the court does not require interpretation of the parties' contract. Instead the court must interpret the Construction Indemnity statute, particularly the meaning of "construction" as used therein, and apply that interpretation to facts not in dispute to determine whether the statute applies to the parties' contract. This question is purely legal. *See Orville Milk Co. v. Beller,* 486 N.E.2d 555, 561 (Ind.Ct. App.1985); *cf. Joseph v. Lake Ridge School Corp.,* 580 N.E.2d 316, 319 (Ind.Ct.App.1991) (holding that statutory interpretation is a question of law). Because no facts are disputed and the question is one of law, the summary judgment procedure may be used to resolve the dispute.

### B. "Construction" in Ind.Code § 26–2–5–1

As relevant to this case, any contract provision that indemnifies a promisee for the promisee's sole negligence is against Indiana public policy and void, if the provision is contained in a "construction or design contract." Ind.Code § 26–2–5–1; *Progressive Construction & Eng. Co. v. Indiana & Michigan Elec. Co.,* 533 N.E.2d 1279, 1286 (Ind. Ct.App.1989).

The statute does not define the term "construction," no legislative history exists, and both case law and scholarly commentary are spare. *Fort Wayne Cablevision v. Indiana & Michigan Elec. Co.,* 443 N.E.2d 863, 869 (Ind.Ct.App.1983). The only case attempting a definition reveals that "[c]onstruction work means to build, erect, or create." *Ogilvie v. Steele,* 452 N.E.2d 167, 170 (Ind.Ct.App. 1983).

Seizing upon this definition, LTV argues that "build, erect, or create" can only refer to new structures, and the plain meaning of construction is so limited. LTV draws the same conclusion from the statute's alterna-

tive reference to "design," a word implying something new, as opposed to "construction, **alteration, repair or maintenance**" (emphasis added) in a similar Illinois statute. Ill. Ann.Stat., ch. 740, para. 35/1 (Smith–Hurd 1993) (formerly Ill.Ann.Stat., ch. 29, para. 61 (Smith–Hurd 1992)). LTV believes that because the contract required Northwest to replace wearplates, a maintenance task, rather than construct anything new, the contract is not for construction as meant by the statute.

Northwest takes a broader view of the statute, arguing that neither the plain meaning of "construction" nor Indiana cases interpreting the word require that it be limited to building, erecting or creating new structures. For example, one case cited by Northwest held that "construction" as used in a courthouse funding statute could include demolition of an existing building.[2] *Board of Comm'rs of Henry County v. State Bd. of Tax Comm'rs,* 529 N.E.2d 1224, 1227 (Ind. Tax Ct.1988). Northwest argues that the maintenance in this case was essentially reconstruction, requiring the same heavy steel construction work as when the coal hoppers were first built. Northwest believes that the statute applies to such construction work.

■ The court agrees with Northwest that the statute must be read as applying to any contract requiring work typically considered to be "construction work," not exclusively to contracts for new construction. Reading the statute as narrowly as LTV proposes would require an unduly restrictive view of the plain meaning of construction, would not serve the policy goals the legislature addressed by the statute, and would be inconsistent with the legislature's use of "construction" in other relevant provisions of the Indiana Code.

The only significant judicial analysis of the Construction Indemnity statute is found in *Fort Wayne Cablevision,* 443 N.E.2d at 869–71. Rather than defining the precise scope

---

cases of contract ambiguity. By relying on law not applicable in the summary judgment context, the parties fail to recognize the established rule that summary judgment cannot be granted if the contract at issue is ambiguous.

2. The case is distinguishable, as LTV notes, because the demolition was the first step in constructing a new building.

of the statute, the *Fort Wayne Cablevision* court explained at length why the contract in that case, allowing a cable television company to attach its wires to utility poles, was not a construction contract. By providing only a negative definition, the decision provides a starting point for analysis rather than a litmus test for what constitutes a construction contract.

The *Fort Wayne Cablevision* court looked at two factors. First, in view of the "realities" of the contract, would it require "strained usage and interpretation in order to consider it to be a construction contract." *Id.* at 869. Second, would finding the contract to be a construction contract be consistent with the legislature's presumed policy interests, i.e., protecting construction contractors from the pernicious effects of the clauses, *id.*, and, because of the inherently dangerous nature of the "construction industry," preventing risk-shifting to promote safety of both workers and the public, *id.* at 870–71; *see also Ogilvie v. Steele,* 452 N.E.2d 167, 169–70 (Ind.Ct.App.1983).

█ Looking at the first factor, despite LTV's insistence that its contract with Northwest plainly and unequivocally is for maintenance and not construction, the "realities" of the contract suggest the contrary. The contract consists of what appears to be LTV's standard "boilerplate" purchase order with several attached pages. Though the purchase order describes the work of Northwest as furnishing "labor, material, supervision and equipment for general maintenance repairs," it also specifies "this work is to be performed in accordance with the terms and conditions of owner's specification G.O. 106–CP–84."

That specification is attached to the purchase order. Among other provisions it quotes rates for "furnishing construction equipment," provides a mark-up for the purchase of "construction materials," notes that prices conform to tax requirements found in "Time and Material Construction Contract General Terms and Conditions," and provides that supervisory personnel will be furnished only if believed warranted by the "Construction Superintendent." These and similar terms throughout the document plainly indicate that it was within the contemplation of the parties that construction work would be performed. Respecting *Fort Wayne Cablevision's* admonition that "labels will not control over substance," describing the work in the purchase order as maintenance is not dispositive.

The second aspect of the *Fort Wayne Cablevision* analysis inquires whether considering the contract to be a construction contract is consistent with the legislature's policy interests. The decision explained those interests as protecting construction contractors from the deleterious effects of such clauses, and promoting safety, by prohibiting risk-shifting, because of the inherent danger the construction industry poses to both workers and the public.

As implied by its name, Northwest Engineering and Construction, Inc., is a construction contractor. The undisputed affidavit of its president and owner, Roger S. Johnson, explains:

> [A]t all times pertinent hereto, Northwest was a general industrial contractor engaged in the business of performing heavy industrial construction, including primarily structural steel erection (heavy iron work), heavy machinery installation (millwright work) and the installation of pipes, valves and vessels (pipefitting construction).

Thus, Northwest is in the category of persons intended to be insulated by the statute from the effect of such indemnity clauses.

Johnson's affidavit also establishes as an undisputed fact that the contract called for construction work: "Edward J. Ellch was engaged in heavy steel construction work, also known as iron work construction, at the time he was injured; further, that said construction work in essence was the same construction work which took place when the coal hoppers and their linings were originally constructed." Thus, the work involved posed the same dangers to Ellch and the public [3] as when the hopper was originally constructed. As a result, finding the contract to be a

---

3. In this case where all work was on LTV's premises danger to the "public" would be limit-

ed. However, the public could, for example, include plant visitors or business invitees.

construction contract would be consistent with the policy interests expressed by the statute, unless, as LTV argues, the plain meaning of "construction" limits the statute's reach to new construction.

█ This argument cannot be easily dismissed. *Black's* defines construction as the "creation of something new, as distinguished from the repair or improvement of something already existing." *Black's Law Dictionary* 312 (6th ed. 1990). In an unambiguous statute words must be given their ordinary and plain meaning. *In re Grissom,* 587 N.E.2d 114, 116 (Ind.1992). LTV uses a simple hypothetical to illustrate that the plain meaning of "construction" is always limited to new construction, excluding maintenance from the purview of the statute. LTV argues that replacing the battery in a car is a typical example of maintenance, and no one would ever call that task construction of the car. Common sense and the ordinary meaning of construction therefore exclude all maintenance activities from the statute.

LTV's hypothetical is the proverbial apple/orange analogy, and the fallacy of the conclusion is easily demonstrated. Maintenance is not always as simple as replacing a battery, and as soon as alternative hypotheticals are posed, "construction" acquires a new "plain meaning" that would include it. Consider bridge maintenance, which can include replacement of structural girders and foundation. In ordinary usage such maintenance tasks are considered construction work, regardless of the fact that nothing new is being constructed. It would be illogical not to recognize this ordinary meaning and usage when determining the scope of the statute, particularly when the policy behind the stat-

ute suggests no reason to distinguish new construction from construction in general.[4]

As a result, it cannot be said that the statute is without ambiguity and that "construction" has a plain meaning that excludes maintenance, despite the definition found in *Black's.* The legislative purpose adduced from the context of a statute should not be defeated by slavish adherence to dictionary definitions. *Chicago & E.I.R. Co. v. Public Service Comm'n of Indiana,* 185 Ind. 678, 114 N.E. 414, 415 (1916). Thus, recognizing that the meaning of "construction" in Indiana statutes varies according to context, *Board of Comm'rs of Henry County,* 529 N.E.2d at 1226, the court must look beyond a "plain meaning" dictionary definition of "construction" to construe the statute.

█ The legislature did not draft the Construction Indemnity statute in a vacuum, and in addition to any ordinary meaning the term may have, presumably was aware of other uses of "construction" in the Indiana Code. Generally, where "construction" is defined in the Indiana Code, the definition provided is broad enough to include maintenance.[5] Furthermore, in interpreting "construction" as used in the Construction Indemnity statute, a legislative definition of the term in another act concerning a related subject, while not conclusive, is entitled to consideration. *Adkins v. Indiana Employment Security Division,* 117 Ind.App. 132, 70 N.E.2d 31, 33 (1946); *see also Inman v. Farm Bureau Ins.,* 584 N.E.2d 567, 569 (Ind. Ct.App.1992) (legislature presumed to be aware of existing statutes in the same area). Statutes addressing the same general subject should be interpreted harmoniously.

---

**4.** Ind.Code § 22–13–4–1(a) which references "building rules adopted ... to govern **new** construction" (emphasis added) indicates the legislature is aware of the need to specify new construction when that is its meaning. (The court recognizes that "new" is necessary because of the broad definition found in § 22–12–1–7. Nevertheless, this does not detract from the conclusion that in ordinary usage, construction is used more broadly than solely as referring to new construction.)

**5.** *See* Ind.Code Ann. § 4–13.5–1–1 (West 1993) (" 'Construction' means the erection, renovation,

refurbishing, or alteration of all or any part of buildings, improvements, or other structures, ... and providing for other ancillary facilities pertinent to the buildings or structures."); Ind.Code Ann. § 8–1–2.2–20 (West 1982) (entitled "Acquisition and construction contracts" discussing "construction, reconstruction, operation, maintenance, repair, extension, and improvement of ... facilities"); and Ind.Code Ann. § 8–10–5–15 (West 1982) (entitled "Bids and bidding, construction contracts and lease or sale of land or property" discussing "[c]ontracts for the creation, construction, alteration, or repair of any building").

*McClaskey v. Bumb & Mueller Farms, Inc.,*
547 N.E.2d 302, 304 (Ind.Ct.App.1989).

In Title 22 of the Indiana Code, "Labor and Industrial Safety," Articles 12–15 regarding fire safety, building and equipment laws, define "construction" to include any "work undertaken to alter, remodel, rehabilitate, or add to any ... structure." Ind.Code Ann. § 22–12–1–7(4) (West 1991 & Supp. 1993). The purpose of the fire safety and building and equipment laws is analogous to that of the Construction Indemnity statute: enhancing safety for both the public and workers in the industry. Thus, it would be unwarranted to conclude that the legislature used the term "construction" more narrowly in the Construction Indemnity statute than in Articles 12–15 of the Title on Labor and Industrial Safety.

LTV finds that the legislature has signaled its intention to use the term that narrowly, by referring only to "construction or design" contracts in the statute where a similar, but older, Illinois statute refers to "construction, alteration, repair or maintenance." Ill.Ann. Stat., ch. 740, para. 35/1 (Smith–Hurd 1993) (formerly Ill.Ann.Stat., ch. 29, para. 61 (Smith–Hurd 1992)). Because the Indiana legislature did not copy the Illinois statute verbatim, LTV surmises alteration, repair, and maintenance are not within the scope of "construction" in the Indiana version.

Concluding, as LTV would, that the difference in language amounts to a conscious decision on the part of the Indiana legislature to exclude alteration, repair, and maintenance from the statute's scope would be nothing more than a guess at legislative intent. There is no evidence that the omission should be imbued with that significance. In fact, rather than indicating a purpose to exclude maintenance, the omission could as easily be an indication that the Indiana legislature viewed the terms as surplusage and unnecessary in light of the commonly-understood meaning of construction. Considering that the policy interests of the two statutes are the same, *Fort Wayne Cablevision*, 443 N.E.2d at 871, narrowing the statute due to a legislative intent divined from a slight difference in statutory wording would be unjustified.

### III. Conclusion

The undisputed facts in this case show that the maintenance contracted for by LTV required Northwest to perform construction work. For the reasons explained above, "construction" as used in Ind.Code § 26–2–5–1 includes all construction work and is not limited solely to new construction. As a result, § 26–2–5–1 renders the contract's indemnification clause insulating LTV from the effects of its own sole negligence void as against the public policy of Indiana.

LTV's motion for partial summary judgment is **DENIED;** Northwest's motion for summary judgment is **GRANTED.** The clerk is to enter final judgment in favor of defendants and against plaintiff LTV, which is to take nothing by its complaint.

**SO ORDERED.**