HUTCHINSON, SHOCKEY, ERLEY
& CO., Appellant–Defendant,

v.

EVANSVILLE–VANDERBURGH COUN-
TY BUILDING AUTHORITY, Appel-
lee–Defendant,

and

The National City Bank of Evansville,
Appellee–Plaintiff.

No. 26A01–9212–CV–417.

Court of Appeals of Indiana,
First District.

Dec. 28, 1993.

Rehearing Denied Feb. 16, 1994.

David W. Crumbo, Mary Ann Guenther, Brown, Todd & Heyburn, New Albany, Victor B. Maddox, Michael Q. Murray, Brown, Todd & Heyburn, Louisville, KY, for appellant-defendant.

F. Wesley Bowers, Cedric Hustace, Bowers, Harrison, Kent & Miller, Robert H. Brown, Kahn, Dees, Donovan & Kahn, Evansville, for appellees.

NAJAM, Judge.

## STATEMENT OF THE CASE

In this appeal we are asked to interpret a Trust Indenture for revenue bonds issued by the Evansville–Vanderburgh County Building Authority ("Authority") for construction of the Civic Center Complex in Evansville. The National City Bank of Evansville, as Trustee, filed a complaint for interpleader and class action for declaratory judgment naming the Authority and the bondholders as defendants. The Trustee asked the trial court to determine whether the Authority was authorized to discharge the lien of the Trust Indenture which secures the bonds without also providing for an immediate redemption of those bonds surrendered prior to maturity. Hutchinson, Shockey, Erley & Co. was certified under Trial Rule 23 as the class representative for all similarly situated bondholders (collectively "Bondholders") and filed a cross-claim demanding redemption of the bonds. The trial court granted the Authority's motion for summary judgment, holding that the Authority was authorized to release the lien of the Trust Indenture and to escrow the funds sufficient to pay interest on the bonds and retire the bonds at maturity without also providing for immediate redemption of the bonds.

We reverse.

## ISSUES

We consolidate and restate the issues as follows:

1. Whether the Trust Indenture is ambiguous and cannot be interpreted without resort to extrinsic evidence.

2. Whether under the rules of contract construction and interpretation, the Authority is authorized to release the lien of the Indenture and escrow the bonds to maturity without also providing for immediate redemption of the bonds.

## FACTS

In May of 1966, the Authority executed a Trust Indenture with The National City Bank of Evansville as Trustee, which provided for the issuance of $19,250,000 in municipal revenue bonds to finance construction of an Administration and Safety Building, Courts Building and School Corporation Building, known as the Evansville Civic Center Complex. The Authority entered into a Governmental Buildings Lease ("Lease") with the City of Evansville, the Board of Commissioners of the County of Vanderburgh and the Evansville–Vanderburgh County School Corporation ("Lessees") over a term of forty (40) years, commencing on the date the buildings were completed and ready for occupancy. As security for payment of the bonds and interest thereon, the Authority pledged and assigned the fixed annual rentals and other income from the Lease on the buildings to the Trustee.

As is customary with trust indentures of this kind, rental income from the Lease was payable to the Trustee for deposit in a Bond and Interest Sinking Fund pledged to, and to be used solely for the payment of, the interest and principal of the bonds issued under the Indenture. The bonds were scheduled to mature serially each year from 1970 through 2006.

In 1990, the Authority determined that it had accumulated sufficient revenue in the Sinking Fund to pay the $12,050,000 in principal then outstanding on the bonds at maturity and accrued interest on the bonds when and as interest became due. However, once the Authority had accumulated sufficient funds to pay the bonds to maturity, the Authority anticipated that the State Board of Tax Commissioners would not approve property tax levies by the Lessees to pay the fixed annual lease rentals on the buildings as required in the Lease. In response, the Authority proposed to terminate, release and discharge the lien and operation of the Indenture securing the bonds, including the Lease on the buildings, to accomplish a "bond defeasance."

The Authority also proposed to invest the Sinking Fund in government obligations held in a Trust Account to be established under a new "Escrow Agreement" with Old National Bank in Evansville as the paying agent and Escrow Trustee, a substitution of collateral arrangement described as an "escrow to maturity." The Escrow Agreement would provide for the timely payment of principal and interest on the bonds according to the original bond schedule under the Indenture. Any funds accumulated in the Trust Account, including interest earned on the government obligations, not needed to pay the principal or interest on the bonds, would be deposited in the Authority's depreciation reserve account and used for repair and renovation of the buildings. Under this plan, after January 1, 1991, no further tax levy would be required for fixed rentals to pay the bonds, and the Authority would use the Trust Account to earn an estimated $9 Million in additional income from the difference between the interest paid on the bonds and interest earned from investing the moneys in the Trust Account.

To activate the Escrow Agreement, the authority requested the Trustee to execute a Release of Trust Indenture acknowledging that the obligations under the Indenture had been satisfied, terminated and discharged, thereby defeasing the bonds. The Release would have authorized the transfer of funds from the Sinking Fund for deposit with the Escrow Trustee, "in an amount at least equal to the principal of and interest to be paid on all outstanding bonds to maturity and sufficient to pay the principal of and interest on all outstanding bonds when due and payable."

In early 1991, after learning that the Trustee held sufficient funds in the Sinking Fund on deposit to redeem all the bonds, Hutchinson, Shockey surrendered $100,000 in bonds nominally due in 2005 to the Trustee for immediate redemption prior to maturity. Because of its concern whether the Indenture authorized the Authority's proposed bond defeasance and escrow to maturity plan, and confronted with conflicting demands from the Authority and Bond-holders, the Trustee initiated this interpleader action seeking a declaratory judgment of its obligations under the Indenture. The Authority and the Bondholders filed answers to the Trustee's complaint. The Bondholders also filed counterclaims against the Trustee, for breach of its fiduciary duty in wrongfully withholding funds available for redemption of the bonds, and filed cross-claims against the Authority, for demanding the Trustee's wrongful release and discharge of the Indenture securing the bonds while withholding funds from the Bondholders available to redeem the bonds. In these various pleadings the Bondholders denied the Trustee's authority to release and discharge the lien of the Indenture without providing for the immediate redemption of the bonds.

After discovery, including numerous depositions and an extensive production of documents, and numerous hearings, on November 10, 1992, the trial court granted summary judgment for the Authority. The Bondholders now appeal from that judgment. We will state additional facts where necessary.

## DISCUSSION AND DECISION

### Standard of Review

■ The purpose of summary judgment is "to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Greathouse v. Armstrong* (1992), Ind.App., 601 N.E.2d 419, 423, *vacated in part on other grounds*, (1993), Ind., 616 N.E.2d 364. When reviewing the grant of a motion for summary judgment, we conduct the same inquiry followed by the trial court. *Selleck v. Westfield Insurance Co.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied.* We consider the evidentiary matter designated under Indiana Trial Rule 56(C) without determining its weight or credibility, and accept as true facts alleged by the nonmoving party. *Lucas v. Estate of Stavos* (1993), Ind.App., 609 N.E.2d 1114, 1116, *trans. denied.*

■ Here, the trial court entered findings and conclusions. Specific findings and

conclusions are neither required nor prohibited by Trial Rule 56. *Althaus v. Evansville Courier Co.* (1993), Ind.App., 615 N.E.2d 441, 444. Although specific findings aid our review, the trial court's entry does not affect our standard of review. *Id.* On appeal, we are not bound by the trial court's findings, and we use the same standard as the trial court in evaluating the propriety of summary judgment. *Keskin v. Munster Medical Research Foundation* (1991), Ind.App., 580 N.E.2d 354, 362. Summary judgment is only appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Ind.Trial Rule 56(C).

### Issue One: Ambiguity

The Bondholders contend that the dispute over the Authority's escrow to maturity plan may not be resolved by reference to the Indenture alone. They maintain that the Indenture is ambiguous because reasonable persons could differ about the meaning of its technical terms and that the Indenture suffers from an ambiguity which can only be resolved through resort to extrinsic evidence. Thus, according to the Bondholders, the trial court erred when it entered summary judgment for the Authority because an interpretation of the Indenture presents questions of fact inappropriate for summary judgment.

When the terms of a contract are unambiguous, the meaning of that contract is a question of law for the court to decide. *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols* (1991) Ind.App., 583 N.E.2d 142, 146. Therefore, summary judgment is particularly appropriate in contract disputes. *Id.* at 146. Where ambiguity exists, and extrinsic evidence is required, construction of the contract is for the fact finder and summary judgment

should not be granted. *McCae Management Corp. v. Merchants National Bank & Trust Co.* (1990) Ind.App., 553 N.E.2d 884, 887, *trans. denied.* However, whether a contract is ambiguous is a question of law. *Indiana Industries, Inc. v. Wedge Products, Inc.* (1982), Ind.App., 430 N.E.2d 419, 423.

The test for determining whether a contract is ambiguous is whether reasonable persons would find the contract subject to more than one interpretation. *Fort Wayne Cablevision v. Indiana & Michigan Electric Co.* (1983), Ind.App., 443 N.E.2d 863, 866. Words in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning is intended. *Id.* at 865. The entire contract must be read together and given meaning if possible. *Id.*

A mere lack of clarity on a casual reading of an instrument is not sufficient grounds to render the instrument ambiguous so as to warrant the admission of extrinsic evidence to explain its meaning. *Hauck v. Second National Bank of Richmond* (1972), 153 Ind.App. 245, 263, 286 N.E.2d 852, 862. Nor is an instrument ambiguous merely because it is difficult to construe. *Id.* "No ambiguity can be said to exist until an application of the rules of interpretation leaves the instrument uncertain which of two or more possible meanings represents the true intention of the [parties]." *Id.* If an apparent ambiguity can be reconciled from a reasonable interpretation of the instrument, extrinsic evidence should not be admitted. *Id.* at 263, 286 N.E.2d at 863.[1]

Upon a careful reading, we conclude that the Indenture can be interpreted within its "four corners" and that when it

---

1. Extrinsic evidence offered to show that the Indenture is subject to more than one reasonable interpretation cannot resolve the question presented. There is no objective evidence of prior or contemporaneous communications, negotiations or understandings which address the issue before us. The extrinsic evidence offered does not tend to establish the meaning of the Indenture at its inception but instead attempts to re-construct and urge and interpretation upon the court after-the-fact. Indiana law requires objective manifestations of contractual intent. *Crabtree v. Lee* (1984), Ind.App., 469 N.E.2d 476, 479. Under these circumstances, we cannot rely upon the subjective opinions of witnesses, although they may be competent and knowledgeable.

is read as a whole and its purpose is considered, only one interpretation emerges that is consistent with the reasonable expectations of the parties when the Indenture was executed. *See Issue Two.*

Thus, we agree with the trial court that there is no genuine issue of material fact, that the Indenture does not require extrinsic evidence for interpretation and that the questions presented can be determined as a matter of law. There is sufficient objective evidence in the text of the Indenture itself to ascertain its intent and to determine whether it authorizes the Authority to defease the bonds and to escrow the bonds to maturity without also providing the Bondholders an opportunity to redeem their bonds for payment upon surrender. We will construe the Indenture according to its terms.

### Issue Two: Interpretation of the Indenture

■■■ It is the duty of the courts to interpret a contract so as to ascertain the intent of the parties. *First Federal Savings Bank of Indiana v. Key Markets, Inc.* (1990), Ind., 559 N.E.2d 600, 603. We look to the "intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties." *Rieth–Riley Construction Co. v. Auto–Owners Mutual Insurance Co.* (1980), Ind.App., 408 N.E.2d 640, 645. When a contract is clear in its terms and the intentions of the parties apparent, we will require the parties to perform consistently with the bargain they made. *Key Markets*, 559 N.E.2d at 604. Further, when construing a contract, we will adopt the construction which appears to be "in accord with justice, common sense and the probable intention of the parties in light of honest and fair dealing." *Rieth–Riley*, 408 N.E.2d at 645.

Therefore, our task is to determine what the parties intended when the Indenture was executed in 1966 and to apply the terms of the Indenture in accord with that intent. Specifically, our inquiry is whether, under the 1966 Indenture, the Authority may accomplish a defeasance and substitute other security for the bonds without

also permitting the Bondholders to surrender and redeem their bonds prior to maturity.

### Articles IV, VI, VII and XIII

■■ As the trial court correctly observed, the Indenture is, in its fundamental terms, a contract between the Authority and the Bondholders. Article IV ("Bond and Interest Sinking Fund") establishes a sinking fund to be held in trust, and under Section 4.06, all moneys paid or deposited in the Sinking Fund, including all rental and other income from the buildings, except those moneys required for maintenance, repair and operation of the buildings, are "pledged to the Trustee to secure the payment of the principal and redemption price and interest on the bonds."

Article VI ("Security for Deposits and Investment of Funds"), Section 6.01, clearly sets out a basic agreement between the parties with respect to use of these moneys:

"All moneys paid to the Trustee under the provisions of this Indenture, or pursuant to the Governmental Buildings Lease, shall be held and applied only in accordance with the provisions of this Indenture and shall not be subject to lien or attachment by any creditor of the Authority."

This section states affirmatively that moneys paid to and held by the Trustee, including both the original bond proceeds and income from the Lease, may be applied only in the manner prescribed under the Indenture.

Article VII ("Particular Covenants") sets out with more specificity the Authority's obligations to the Bondholders. In Section 7.01 of Article VII, the Authority makes the following covenants:

"Section 7.01

.    .    .    .    .

Except for changes made in the plans and specifications pursuant to this Section, the Authority covenants that *it will not agree to any modification of the terms of the Governmental Buildings Lease which would substantially im-*

*pair or reduce the security of the holders of the bonds, or agree to the termination thereof, or agree to a reduction of the lease rental provided for therein until all indebtedness secured by this Indenture is fully paid, except upon compliance with the provisions of Section 12.02.*"

(emphasis added). Thus, the Authority's proposal to terminate the Lease as security for the Indenture before all indebtedness secured by the Indenture has been fully paid is subject to the provisions of Sections 4.06, 6.01 and 7.01.

As we have noted, the Authority proposes to defease the bonds prior to maturity and to invest the Sinking Fund in government obligations held in a Trust Account to be established under a new Escrow Agreement with Old National Bank in Evansville as paying agent and Escrow Trustee. However, the Indenture gives the Authority only three options: (1) pay the bondholders by electing to purchase its outstanding bonds, as provided under Article IV; (2) pay the bondholders by redeeming the bonds, as provided under Article V ("Redemption of Bonds"); or (3) under Article XII ("Supplemental Indentures"), Section 12.02, obtain the approval of the holders of not less than two-thirds of the bonds to modify the Indenture or to terminate the obligation of the Lessees to pay fixed lease rentals. Thus, unless the Authority either pays the bondholders or obtains relief from the Indenture by securing approval from the Bondholders under Section 12.02, the Authority's proposed Escrow Agreement would constitute a breach of the covenants contained in Section 7.01.

### Article XIII—Sections 13.01 and 13.02

We next consider Article XIII ("Defeasance"). The first sentence of Section 13.01 provides that a defeasance occurs if the Authority shall pay or cause to be paid to the Bondholders, at the times and in the manner stipulated in the bonds and in the Indenture, the principal and interest and redemption price, in which event "the pledge of rentals and other income, moneys and securities hereby pledged ... shall thereupon cease, terminate and become void and be discharged and satisfied." We conclude that the converse of this provision must also be true, that if the pledge of such rentals and other income pledged to secure the bonds is terminated, causing a defeasance, then the Authority must redeem the bonds upon surrender, "whether or not prior to the maturity or redemption date thereof," in the manner provided in the next section, Section 13.02.[2]

Both the parties and the trial court have devoted considerable attention to interpretation of Article XIII. We agree with the trial court's conclusion that the language of Section 13.02 is "very convoluted" and "difficult to understand without study." However, we believe that the parties and the court have placed undue emphasis and reliance on Article XIII. Sections 13.01

---

**2.** Section 13.02 provides:

"Bonds or coupons for the payment or redemption of which money shall then be held by the Trustee or the Paying Agents (through the deposit by the Authority of funds for such payment or redemption, or otherwise), whether at or prior to the maturity or redemption date of such Bonds, shall be deemed to have been paid, within the meaning of Section 13.01; provided, however, that if any such Bonds are to be redeemed prior to the maturity thereof, the Authority shall have taken all action necessary to redeem such Bonds, and notice of such redemption shall have been duly given or provision satisfactory to the Trustee shall have been made for the giving of such notice; *and provided further, that if the maturity or redemption date of any such bond shall not then have arrived, provision shall have been made by the Authority, by deposit* with the Trustee or other method satisfactory to it, for the payment to the holders of any such Bonds and coupons, upon surrender thereof, whether or not prior to the maturity or redemption date thereof, of the full amount to which they would be entitled by way of principal, redemption price or interest to the date of such maturity or redemption; *and provision shall have been made by the Authority, satisfactory to the Trustee, for the publication at least twice in an interval of not less than seven (7) days between publications in newspapers of general circulation or financial journals published in the Cities of Indianapolis, Indiana, and New York, New York, respectively, which notice shall advise the holder of the bonds and coupons that such moneys are so available for such payment.*" Record at 158 (emphases added).

provides that a defeasance occurs when the Authority "shall pay or cause to be paid, or there shall otherwise be paid, to the holders of the bonds and coupons the principal and interest and redemption price." Section 13.02 describes the procedure which the Authority must follow after a defeasance has occurred and when money for payment or redemption of the bonds is held by the Trustee. Because both sections assume payment, neither section answers the question before us.

The Authority contends, in effect, that the deposit of sufficient funds to pay the bonds and interest with the Escrow Trustee under its proposed escrow to maturity plan satisfies the requirement that the Authority "cause to be paid" to the Bondholders the "principal and interest and redemption price" when a defeasance occurs under the Indenture. We cannot agree. We find nothing in the Indenture to support the conclusion that *actual* payment and redemption upon surrender of the bonds, at or prior to maturity, can be postponed by an escrow once defeasance has occurred and the moneys are available on deposit with the Trustee for such payment. Such an arrangement would violate the pledge of security provisions and other affirmative covenants of the Authority found elsewhere in the Indenture.

▮ The Authority concludes its brief by arguing that the trial court's ruling gives the Bondholders "everything they bargained for—payment of principal of the bonds in full at maturity, periodic interest payments in the interim and the payment fund being fully secured by United States Government securities on deposit with NCB." Appellee's Brief at 35. Again, at oral argument, the Authority maintained that its plan to invest the proceeds of the Sinking Fund in government obligations would give the bondholders "better" security than the Lease which originally secured the bonds. However, that contention must fail because the Bondholders did not bargain for a substitution of collateral when they executed the Indenture. Even if the new security were unassailable, we could not alter the original bargain between the

Authority and the Bondholders under the guise of interpretation. Courts have no authority to make a new or different contract for the parties. *Asbury v. Indiana Mutual Insurance Co.* (1982), Ind.App., 441 N.E.2d 232, 239. We conclude that Authority has conceived its "escrow to maturity" plan from whole cloth, without regard to the terms and covenants of the Indenture, and that the plan would thrust a new agreement upon the Bondholders for which they did not bargain. The Authority must honor its obligations to the Bondholders as required under Sections 4.06, 6.01, 7.01, 12.02, 13.01 and 13.02 of the Indenture.

### Enabling Legislation

▮ Finally, we note that the parties must have intended to enter into a lawful agreement, because as a general rule, all applicable law in force at the time an agreement is made impliedly forms a part of the agreement. *Johnson v. Sprague* (1993), Ind.App., 614 N.E.2d 585, 589. Here, the County Building Authority Statute in effect in 1966 provided that the maturities of municipal revenue bonds "shall not extend over a period longer than the period of the lease of the building or buildings on account of which said bonds are issued." IND.CODE ANN. § 26–2516 (Burns 1960) (enacted 1953 Ind.Acts ch. 54, § 16) (current version at IND.CODE § 36–9–13–30). This statute means that when the leases for the government buildings are terminated and, thus, the security for the bonds is released, the bonds must be eligible for redemption. The same statute also provides that "[a]ll monies received from any bonds issued ... shall be applied solely to the payment of the costs of the buildings, improvements and betterments on account of which said bonds are issued...." IND.CODE ANN. § 26–2517 (Burns 1960) (current version at IND.CODE § 36–9–13–33).

The County Building Authority Statute does not provide for circumstances in which the bonds would remain outstanding when the leases are no longer pledged as security. Instead, the statute establishes

that the maturities of the bonds issued by the Authority may not extend beyond defeasance, an interpretation apparently consistent with the policy of our State Board of Tax Commissioners which will not approve municipal budgets including tax levies for fixed lease rentals pledged as security after sufficient revenue has been collected to redeem the bonds to maturity. That policy, which virtually compels a defeasance under such circumstances, apparently precipitated the Authority's escrow to maturity plan. The only lawful interpretation of the Indenture requires redemption upon defeasance of the bonds.

## CONCLUSION

The Indenture is not a private contract but a public contract. The purpose for the bond issue was to finance the construction of public buildings. That purpose was accomplished first when the bonds were sold, and then when sufficient revenue was generated to retire the bonds. There is no provision in the Indenture authorizing the life of the bond issue to be extended after its purpose has been accomplished merely to permit the Authority to invest the cash on hand for additional profit. The Indenture as written does not provide for such an option, and neither can it lawfully be construed in that manner.

We hold that under the Indenture, before the Authority can lawfully defease the bonds and implement its escrow to maturity plan, it is required to obtain the consent of the holders of two-thirds of the bonds to modify the Indenture. Absent such consent, the terms and covenants of the Indenture do not authorize the Authority to defease the bonds without also providing for immediate redemption. Thus, when the lien of the Indenture on the obligations which secure the bonds is terminated and released, the bonds are defeased, and the Bondholders are entitled to surrender and redeem their bonds, whether at or prior to maturity.

We reverse the entry of summary judgment in favor of the Evansville–Vanderburgh County Building Authority, and against the plaintiff, The National City Bank of Evansville, and the Defendant and Cross–Claimant, Hutchinson, Shockey, Erley & Co., and other persons and entities comprising the Class known as Bondholders, and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

ROBERTSON and RUCKER, JJ., concur.