**GKN CO., formerly known as Gust K. Newberg Construction Company, Appellant–Plaintiff,**

v.

**STARNES TRUCKING, INC., Appellees–Defendant.**

No. 49A02–0304–CV–282.

Court of Appeals of Indiana.

Nov. 14, 2003.

Ronald J. Waicukauski, Jana K. Strain, Price, Jackson, Waicukauski & Mellowitz, P.C., Indianapolis, IN, Attorneys for Appellant.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Larry Magness sought recovery from Gust K. Newberg Construction Company ("GKN") for injuries resulting from a fall

while working on a construction project in Indianapolis for which GKN was the general contractor. GKN, after settling with Magness pursuant to an Agreed Judgment, brought an indemnity complaint against Magness's employer and GKN's subcontractor, Starnes Trucking, Inc. ("Starnes"). GKN filed a Motion for Partial Summary Judgment and the trial court denied GKN's motion. Starnes filed a Motion for Summary Judgment on the indemnity claim and the trial court granted Starnes's motion. GKN now appeals. We reverse and remand with instructions.[1]

### Issue

GKN raises one issue for our review which we restate as whether the trial court properly granted Starnes's Motion for Summary Judgment and denied GKN's Motion for Partial Summary Judgment on the indemnity claim.

### Facts and Procedural History

GKN was the general contractor for a highway construction project contracted through the Indiana Department of Transportation for repair work on I–65 and I–465 on the south side of Indianapolis. GKN subcontracted with Starnes to perform certain hauling services on the project. Magness was a truck driver employed by Starnes to work on the project.

During the project, GKN built a concrete batch plant with an area for fueling the trucks that hauled the concrete. This fueling area included a containment wall, or "moat," consisting of a concrete berm surrounding the perimeter of the fueling area with the purpose of controlling fuel spills. On July 14, 1992, while working on the project, Magness stopped in the fueling area to refuel his truck. During the refueling, he stepped on the concrete berm and fell.

Magness initiated this action by seeking recovery from GKN for the injuries which resulted from his fall.[2] Based upon an indemnity provision in its subcontract for the project, GKN filed a Third Party Complaint for Indemnity against Magness's employer, Starnes. The indemnity provision, located in paragraph seventeen of the subcontract, provides:

> [Starnes] shall indemnify and hold harmless the Owner, the Architect Engineer, and [GKN] and their agents and employees from and against all claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the work, provided that such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself) including the loss of use resulting therefrom; and (2) is caused in whole or in part by any negligent act or omission of [Starnes] or any of his subcontractor's [sic], anyone directly or indirectly employed by any of them or for anyone for whose acts any of them may be liable, regardless of whether it is caused in part by a party indemnified hereunder.

Appellant's Appendix at 46.

GKN moved for partial summary judgment on its third party claim for indemnity

---

**1.** GKN filed a Motion for Oral Argument with this court. GKN's motion is hereby denied.

**2.** This case was previously the subject of an interlocutory appeal on a motion to dismiss filed by GKN on the grounds that Magness's exclusive remedy against GKN was under the Indiana Worker's Compensation Act (the "Act"). Our supreme court held that Magness was not an employee of GKN and therefore, GKN failed to establish that Magness's claim of injury fell within the scope of the Act. *GKN Co. v. Magness*, 744 N.E.2d 397, 407 (Ind.2001).

against Starnes. Starnes filed a cross-motion for summary judgment, arguing that the indemnity provision was unenforceable for failing to state with clarity that Starnes agreed to indemnify GKN for GKN's own negligence. The trial court denied GKN's motion and granted Starnes's cross-motion.

On March 3, 2003, the trial court approved an Agreed Judgment between Magness and GKN. In the Agreed Judgment, Magness accepted responsibility for twenty per cent of the negligence and GKN accepted responsibility for eighty per cent of the negligence. The trial court found that Magness's total damages were $250,000.00 and entered judgment against GKN for $200,000.00, representing eighty per cent of Magness's total damages.[3] It was specifically noted that the Agreed Judgment did not purport to settle GKN's third party claim against Starnes and that GKN reserved the right to appeal the summary judgment entered in favor of Starnes. This appeal ensued.

### Discussion and Decision

#### I. Standard of Review

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Hagerman Constr. Co. v. Long Elec. Co.*, 741 N.E.2d 390, 391 (Ind. Ct.App.2000), *trans. denied.* Relying upon specifically designated evidence, the moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Hagerman*, 741 N.E.2d at 391. If the moving party meets these two requirements, the burden then shifts to the non-movant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine

issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.* On appeal, this court is bound by the same standard as the trial court, and we consider only those matters which were designated to the trial court. *Id.* at 392. We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. *Id.* The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. *Id.*

#### II. Motions for Summary Judgment

The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *Lake States Ins. Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 318 (Ind.Ct.App.2001). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* If our review of the record discloses an incorrect application of the law to the undisputed facts, then we must reverse the grant of summary judgment. *Id.* at 317.

##### A. Starnes's Motion for Summary Judgment

■ On September 11, 2002, Starnes filed its Motion for Summary Judgment, arguing that the indemnification clause in the Subcontractor agreement was unenforceable for failing to state with clarity that Starnes agreed to indemnify GKN for GKN's own negligence. The trial court granted Starnes's motion.

---

3. GKN has satisfied the Agreed Judgment by paying $200,000.00 to Magness.

■ Initially, we review the relevant rules of contract interpretation. When reviewing the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 478 (Ind.Ct.App.2000), *trans. denied.* The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.* Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* The entire contract must be read together and given meaning, if possible. *Id.*

■ Absent prohibitive legislation, no public policy prevents parties from contracting as they desire. *Hagerman*, 741 N.E.2d at 392. For instance, in Indiana, a party may contract to indemnify another for the other's own negligence. *Id.* However, this may only be done if the party knowingly and willingly agrees to such indemnification. *Id.* Such provisions are strictly construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal terms. *Id.* We disfavor indemnification clauses because we are mindful that to obligate one party for the negligence of another is a harsh burden that a party would not lightly accept. *Id.*

This court has followed a two-step analysis to determine whether a party has knowingly and willingly accepted this burden. *Id. See also Exide,* 727 N.E.2d at 480; *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols,* 583 N.E.2d 142, 146 (Ind.Ct.App.1991). First, the indemnification clause must expressly state in clear and unequivocal terms that negli-

gence is an area of application where the indemnitor (in this case, Starnes) has agreed to indemnify the indemnitee (in this case, GKN). *See Hagerman,* 741 N.E.2d at 392. The second step determines to whom the indemnification clause applies. *Id.* Again, in clear and unequivocal terms, the clause must state that it applies to indemnification of the indemnitee by the indemnitor for the indemnitee's own negligence.

1. Negligence as an Area of Application

The first step of the analysis is to determine if the indemnification clause clearly and unequivocally states that negligence is an area of application. The *Moore* court noted that the indemnification clause considered therein contemplated liability, damages, actions, omissions, duties, and causations which the court stated are the language of negligence. *Moore,* 583 N.E.2d at 144. Therefore, the *Moore* court held that the challenged indemnification clause clearly and unequivocally stated that negligence was an area of application. *Id. See also Hagerman,* 741 N.E.2d at 393 (holding that an indemnification clause clearly and unequivocally applied to negligence because the clause spoke of claims, damages, losses and expenses attributable to bodily injury, sickness, disease or death and injury to or destruction of property); *Exide,* 727 N.E.2d at 480 (holding that an indemnification clause applied to the acts of negligence because it discussed liability, claims and suits and contemplated losses, fines, and expenses).

In the present case, the indemnification clause includes: "claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting form the performance of the work ... provided that such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death or to injury or destruction of tangible property...." Ap-

pellant's Appendix at 46. Therefore, the indemnification clause expressly states in clear and unequivocal terms that negligence is an area of application where Starnes has agreed to indemnify GKN. This satisfies the first step of the analysis.

### 2. GKN's Own Negligence

When applying the second step, we must determine whether the indemnification clause clearly and unequivocally applies to indemnification of GKN by Starnes for GKN's own negligence. GKN directs our attention to *Moore,* in which this court held that an indemnification clause clearly and unequivocally identified the subject of the indemnitor's indemnification for the indemnitee's own negligence. *Moore,* 583 N.E.2d at 144. The facts in *Moore* are identical to the facts in the present case in that an employee sued a general contractor for injuries suffered while working at a job site and the general contractor sued the sub-contractor for indemnification. The indemnification clause in *Moore* stated:

> [Moore] agrees to indemnify [Huber] against and hold [Huber] harmless from any and all liability ... from any claim or cause of action of any nature arising while on or near the Job Site ... including claims relating to its ... employees, or by reason of any claim or dispute of any person or entity for damages from any cause directly or indirectly relating to any action or failure to act by [Moore], its representatives, employees, subcontractors or suppliers, and whether or not it is alleged that [Huber] in any way contributed to the alleged wrongdoing or is liable due to a nondelegable duty. It is the intent of the parties that [Moore] shall indemnify [Huber] under [this indemnification clause and the insurance clause] to the fullest extent permitted by law, however, [Moore] may not be obligated to indem-

nify [Huber] for the sole negligence or willful misconduct where such indemnification is contrary to law, but otherwise it is the intent of the parties that [Moore] shall indemnify [Huber] to the fullest extent permitted by law for such liability.

*Id.* at 144. The trial court entered summary judgment in favor of the general contractor on the indemnification claim and the subcontractor appealed.

Upon appeal, the court focused on the statement "however, [Moore] may not be obligated to indemnify [Huber] for the sole negligence or willful misconduct where such indemnification is contrary to law" and determined that such a statement unquestionably, expressly, clearly, and unequivocally identified the subject of Moore's indemnification of Huber for Huber's own negligence. *Id.* Therefore, the court held that the indemnification clause was enforceable.

Relying on *Moore,* GKN contends that the indemnification clause at hand clearly and unequivocally identifies the subject of Starnes's indemnification of GKN for GKN's own negligence. We agree. The indemnification clause in the immediate case states clearly that Starnes will indemnify GKN for damages resulting from bodily injury where the claim:

> ... is caused in whole or in part by any negligent act or omission of [Starnes] or any of his subcontractor's [sic], anyone directly or indirectly employed by any of them or for anyone for whose acts any of them may be liable, *regardless of whether it is caused in part by a party indemnified hereunder.*

Appellant's Appendix at 46 (emphasis added). Therefore, it is clear that the indemnification clause states that Starnes's liability for indemnification to GKN will not be negated merely because GKN is partly at fault. It is equally clear, and both

parties agree, that Starnes was not to indemnify GKN for any injury which was the result of GKN's negligence alone. However, through the indemnification clause, Starnes has agreed to indemnify GKN for GKN's own negligence where the injury is caused partly by the negligence of Starnes or any of its employees.

For its position, Starnes directs our attention to *Exide* and *Hagerman*. In *Exide*, a construction worker brought action against the operator of the factory in which he was working and the operator brought a third-party indemnification claim against the worker's employer. The indemnification provision provided:

> Without limiting the foregoing, Contractor, for itself, its successors and assigns releases Exide and agrees to indemnify, defend with counsel satisfactory to Exide and hold harmless Exide and its officers and employees from any [sic] against any and all liability, claims, actions, suits, losses, costs and expenses (including without limitation attorneys' fees), fines or penalties which may arise in any way, directly or indirectly, from Contractor, its employees, subcontractors and their employees, third persons or the government, and from entry onto the Site or any other Exide property or from use, the possession, handling, storage, transportation, and treatment or disposal, of any materials or exposure thereto or contract therewith. This indemnity shall survive the termination or expiration of any contract between the contractor and Exide or receipt and removal of the materials. If any portion of this indemnity shall in the future be deemed or held to be invalid or unenforceable, the indemnity shall apply and be enforceable to the maximum extent allowed by law.

*Exide*, 727 N.E.2d at 479. This court held that the clause did not explicitly state that

the contractors were required to indemnify Exide for its own negligent acts and therefore, the contract was unenforceable. *Id.*

In *Hagerman*, an injured employee of a subcontractor brought action against the general contractor and the general contractor brought a third-party indemnification claim against the subcontractor. The indemnification clause in *Hagerman* provided:

> To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Subsubcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in [this paragraph].

*Hagerman*, 741 N.E.2d at 392–93. Upon appeal, this court held that the indemnification clause did not clearly and unequivocally state that Long was to indemnify Hagerman for its own negligent acts. *Id.* at 393. Specifically, the court noted that

the phrase "but only to the extent" clearly limited Long's obligation to indemnify Hagerman only to the extent that Long, its sub-subcontractors, employees, and anyone for whom it may be liable were negligent. *Id.* at 393–94. Otherwise, the court continued, the clause contained no clear statement that would give the contractors notice of the harsh burden that complete indemnification would impose. *Id.* at 394.

Contrary to *Exide* and *Hagerman,* the indemnification clause in the current case clearly and unequivocally operated to alert Starnes to the burden it undertook. The clause clearly states that Starnes will indemnify GKN even when GKN is partly at fault. We note that Starnes has experience in contracts and should have recognized the burden to which it agreed in the Subcontractor Agreement. *Exide* and *Hagerman* are distinguishable and are not instructive.

Therefore, we reverse the trial court's granting of Starnes's Motion for Summary Judgment and hold that the indemnification clause clearly and unequivocally states that Starnes was to indemnify GKN for GKN's own negligence provided that GKN was not completely at fault.

### B.  GKN's Motion for Partial Summary Judgment

On July 26, 2002, GKN filed its Motion for Partial Summary Judgment with the trial court. In that motion, GKN requested summary adjudication that Starnes was required to indemnify GKN for any judgment, loss, expense, or attorney's fee incurred by GKN if Magness was found to have any contributory fault. The trial court denied GKN's Motion for Partial Summary Judgment. Based upon the discussion above and our holding that the indemnification agreement clearly and unequivocally notified Starnes of its indemnification of GKN for GKN's own negli-

gence, we reverse the trial court and order that GKN's Motion for Partial Summary Judgment be granted. Thus, we hold that Starnes is required to indemnify GKN for any judgment, loss, expense, or attorney's fee incurred by GKN if Starnes or any of its employees—including Magness—are found to have any contributory fault.

■ Although we reverse and remand to the trial court for further proceedings, we must address one additional issue. Specifically, we need to determine whether Starnes can be held to the Agreed Judgment when Starnes was not a party to that judgment. We hold that it cannot. Although Starnes was not a necessary party to the Agreed Judgment, we believe that it would be unfair to allow GKN and Magness to create a judgment which, in essence, would force Starnes to pay for Magness's injuries. GKN has argued, and no doubt will argue again, that the Agreed Judgment makes Magness's negligence clear—that Magness was twenty per cent at fault. However, we are hesitant to agree with that conclusion. If we follow that reasoning, a general contractor will be able to approach an injured worker and offer that worker money for his injuries immediately and thereby allow the worker to collect his money without presenting evidence at trial. However, by admitting to a percentage of the negligence, the worker (perhaps unknowingly) binds the subcontractor to a judgment in which the subcontractor is not a party.

We look to *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce,* 762 N.E.2d 1227 (Ind.2002) for guidance. In *Bruce,* State Farm Fire and Casualty Company ("State Farm") declined to represent an insured homeowner in a suit brought by a child whom the insured's husband molested during daycare in the insured's home. The insured agreed to a consent judgment of $375,000.00 with the stipulation that none

of it would be collected from the insured who then assigned all policy rights to the child. The trial court entered the judgment and later granted summary judgment in favor of the child in proceedings supplemental against State Farm. State Farm appealed, claiming that the trial court erred when it estopped State Farm from raising a childcare exclusion in the homeowner's policy as a defense.

The *Bruce* court stated that the agreed judgment addressed State Farm's contractual obligations under the homeowner's policy even though the child's claim did not. Therefore, the court held that such statements in the judgment were tantamount to dictum and State Farm was not estopped from challenging those statements during proceedings supplemental. *Id.* at 1232. Therefore, the court stated that there was a genuine issue of material fact regarding the childcare exclusion and held that summary judgment for either party was unsustainable. *Id.* at 1233. The court reversed the trial court and remanded for a trial on the merits. *Id.*

Here, GKN and Magness entered into an agreement in which GKN agreed to pay eighty per cent of Magness's damages.[4] However, any statements regarding Magness's admission of negligence are tantamount to dictum. Therefore, a genuine issue of material fact remains regarding Magness's negligence. We remand to the trial court for a trial on the merits regarding Magness's negligence.[5]

*Conclusion*

The indemnification clause in the Subcontractor Agreement clearly and unequivocally identified the subject of Starnes's indemnification of GKN for GKN's own negligence. Thus, the trial court erred in granting Starnes's Motion for Summary Judgment and in denying GKN's Motion for Partial Summary Judgment. However, the Agreed Judgment contained statements regarding Magness's negligence which are tantamount to dictum. Therefore, a genuine issue of material fact remains as to whether GKN was wholly or only partly negligent and we remand to the trial court for a trial on the merits.

Reversed and remanded with instructions.

NAJAM, J., and MATHIAS, J., concur.

---

4. We note that the Agreed Judgment specifically states that it does not purport to settle GKN's third party claim against Starnes. Appellant's Appendix at 121.

5. We recognize that, upon remand, GKN need only prove that Magness was one per cent at fault and Starnes will be required to indemnify GKN for Magness's injuries. However, we believe it is important to allow Starnes to have an opportunity to litigate the question of Magness's negligence rather than allowing GKN to circumvent this litigation by approaching Magness with an offer which Magness could not refuse.