## In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1401

NES RENTALS HOLDINGS, INC., et al.,

*Plaintiffs-Appellants*,

*v.*

STEINE COLD STORAGE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 10-CV-00406—**Roger B. Cosbey**, *Magistrate Judge.*

ARGUED SEPTEMBER 14, 2012—DECIDED APRIL 8, 2013

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Humberto Menendez tragically died from injuries he suffered while operating a forty-foot boom lift. His employer, Steine Cold Storage, Inc., had rented the lift from NES Rentals. Menendez's family filed suit against NES and others, alleging that their negligence caused the death. NES then sought indemnification from Steine pursuant to an indemnification clause in the rental agreement for the boom lift.

Indiana courts allow a party to contract to indemnify for the other party's own negligence but have said that doing so is a "harsh burden" that a party would not lightly accept absent express language in the agreement evidencing such an intention. We agree with Steine that the indemnification clause in the rental agreement does not expressly state, in clear and unequivocal terms as Indiana law requires, that Steine agreed to indemnify NES for NES's own negligence. We therefore affirm the district court's grant of summary judgment in favor of Steine.

## I. BACKGROUND

Steine Cold Storage, Inc. was a subcontractor for the installation of thermal units at a Wal-Mart store that was under construction in Gas City, Indiana. Steine needed a boom lift, so it rented one from NES Rentals, a company that leases construction equipment. NES delivered the lift to the Wal-Mart work site on August 23, 2006, where Steine foreman Edward Crager signed a one-page, two-sided NES "Rental Agreement."

The Rental Agreement's signature line is at the bottom of its front side. Above the signature line, the Agreement states:

> Signer acknowledges that he has read and fully understands this rental agreement including the terms and conditions on the reverse side. Signer agrees that Customer is solely responsible for compliance with Federal and State training

and licensing requirements, except where Company provides operator. Signer acknowledges that he is authorized to Sign this agreement and bind the customer to the terms and conditions on the reverse side.

Below the signature line, in all capitals and italics, are the words: "Please note that there are important terms on the reverse side of this contract, including an indemnification provision."

On the reverse side, paragraph 19, the final paragraph, appears in bold, italics, and in text larger than all the other text on the page. It provides:

> 19. Indemnity. Customer [Steine] agrees to indemnify and hold Company [NES] harmless against any and all claims, demands, or suits (including costs of defense, attorney's fees, expert witness fees, and all other costs of litigation) for any and all bodily injury, property damage, or any other damages or loss, regardless of whether such injury, damage or loss is caused in whole or in part by negligence, which arise out of, result from, or relate to the use, operation, condition or, presence of the equipment except where such injury, damage or loss is caused solely by the Company [NES].

NES performed a maintenance check of the boom lift on September 27, 2006. About three weeks later, on November 20, 2006, Humberto Menendez, a Steine employee, was operating the boom lift while working and was fatally injured. Menendez's family filed a wrongful death lawsuit against various parties, including NES and Wal-

Mart, alleging that each of the defendants was negligent and contributed to Menendez's death. The family's complaint did not allege that Steine was negligent and did not name Steine, Menendez's employer, as a defendant (presumably in light of the Indiana Worker's Compensation Act, *see* Ind. Code §§ 22-3-2-2, 22-3-2-6).

After Menendez's family filed its lawsuit, NES made a demand upon Steine that it indemnify and hold NES harmless for any amount for which NES was found to be liable in the Menendez family lawsuit, as well as the costs of defense, attorney's fees, and other litigation costs incurred by NES in defending against the family's lawsuit. Steine refused and as a result, on November 19, 2010, NES filed this lawsuit against Steine. NES maintained that under the Rental Agreement, Steine had a duty to indemnify NES for the negligence claims against NES asserted by the Menendez family in its lawsuit. NES's complaint also asserted that it had been incurring losses, including attorney's fees, as a result of Steine's failure to indemnify NES. NES and Steine filed cross motions for summary judgment, although NES's motion was for partial summary judgment since the extent of damages was unknown when the lawsuit was filed. The magistrate judge, sitting by authority of 28 U.S.C. § 636(c) and with the consent of both parties, decided the motions. The judge denied NES's motion for partial summary judgment and granted summary judgment in favor of Steine. NES appeals.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012). In doing so, we review the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Xiong v. Wagner*, 700 F.3d 282, 288 (7th Cir. 2012). The parties agree that Indiana law governs this suit. As a court sitting in diversity and applying Indiana law, we are required to make our best prediction of how the Supreme Court of Indiana would decide the case. *BMD Contractors, Inc. v. Fid. and Deposit Co. of Md.*, 679 F.3d 643, 648 (7th Cir. 2012). Where as here the state supreme court has not spoken on a particular issue, then "'decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.'" *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 925 (7th Cir. 2002) (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999)).

An indemnity agreement involves "a promise by one party (the indemnitor) to reimburse another party (the indemnitee) for the indemnitee's loss, damage, or liability." *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 756 (Ind. Ct. App. 2002). We have recognized that

"[a]s a general matter, parties are free under Indiana law to enter into an indemnification clause and may obligate one party to insure against and/or to indemnify certain acts or omissions of the other party." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 469 (7th Cir. 2006); *see also, e.g., GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003). In particular, when it comes to negligent conduct, Indiana allows a party to contract to indemnify another for the other's own negligence. *GKN*, 798 N.E.2d at 552. *But see, e.g., J.S. Alberici Const. Co. v. Mid-West Conveyor Co.*, 750 A.2d 518, 521 (Del. 2000) (under Delaware law, contractual provision requiring one party to indemnify another for other party's own negligence, whether sole or partial, is unenforceable).

Indiana courts have construed contracts to indemnify another for the other's own negligence strictly, explaining that "[c]ourts disfavor such indemnification clauses because to obligate one party for the negligence of another is a harsh burden which a party would not lightly accept." *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142, 145 (Ind. Ct. App. 1991). Therefore, Indiana appellate courts have ruled that a party may be obligated by contract to indemnify another for the other's own negligence only if the party "knowingly and willingly" agrees to this indemnification, and a contract will only be held to provide indemnification for the other's own negligence if "it is so stated in clear and unequivocal terms." *GKN*, 798 N.E.2d at 552.

Indiana courts have followed a two-part test to assess whether a party "knowingly and willingly" accepted the burden of indemnifying the other for the other party's negligence. *Id.*; *see also Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 479-80 (Ind. Ct. App. 2000). First, the court reviews the indemnification clause to see whether it states in clear and unequivocal terms that negligence is an area of application where the indemnitor (here, Steine) has agreed to indemnify the indemnitee (here, NES). *GKN*, 798 N.E.2d at 552. The parties agree that the first step is satisfied. Paragraph 19 in the Rental Agreement, the indemnification provision, expressly mentions "negligence." It states in particular that indemnification applies "... for any and all bodily injury, damage, or any other damages or loss, regardless of whether such injury, damage or loss is caused in whole or in part by negligence ...."

Second, the court determines to whom the indemnification clause applies; "in clear and unequivocal terms, the clause must state that it applies to indemnification of the indemnitee by the indemnitor for the indemnitee's own negligence." *Id.* We first note that the parties agree that Steine has no obligation to indemnify NES if the sole cause of the injury or damages is NES, as the indemnification clause specifically excludes that from coverage. *See* Par. 19 of Rental Agreement ("... except where such injury, damage or loss is caused solely by [NES]"); *Raytheon Eng'rs & Constructors, Inc. v. Sargent Elec. Co.*, 932 N.E.2d 691, 698 (Ind. Ct. App. 2010).

The question at hand is whether, if NES is assessed some portion of fault in the Menendez family suit and

others are also assessed some portion of fault, the indemnity clause in the Rental Agreement means that Steine must indemnify NES for NES's own negligence. In light of the "harsh burden" imposed by obligating a party for another's negligence, the indemnification for NES's own negligence must be "explicit," not "implicit," for Steine to have knowingly and willingly accepted the burden. *See Moore Heating*, 583 N.E.2d at 146. The Indiana appellate court explained in *Moore Heating*:

> For example, if a clause simply states that a sub-contractor shall indemnify a general contractor for any negligence which arises from the job, it is sufficient to show that the clause applies to negligence but is insufficient to inform the sub-contractor that it must indemnify the general contractor for acts of the general contractor's own negligence. The claim of negligence which arises from the job could have been caused by the negligence of the general contractor, the sub-contractor, third persons, or a combination of them. This is the very reason the indemnity for the indemnitee's own negligence must be specifically, not generally, prescribed . . . . Therefore, in order to reflect a knowing and willing acceptance of such a harsh burden, the indemnification clause must expressly state, in clear and unequivocal terms, that the indemnitee agrees to indemnify the indemnitor against the indemnitor's own negligence.

*Id.* at 145-46.

Here, the indemnification clause provides that Steine will indemnify NES for any injury, "regardless of whether such injury . . . is caused in whole or in part by negligence. . . ." Under the explanation in *Moore Heating* that we just quoted, that statement is sufficient to make clear to Steine that the indemnification clause applies to negligence, but it is not sufficient to inform Steine "in clear and unequivocal terms" that Steine must indemnify NES for acts of NES's own negligence. *See id.; see also, e.g.*, *Vernon Fire and Cas. Ins. Co. v. Graham*, 336 N.E.2d 829, 831 (Ind. Ct. App. 1975) (finding clause insufficient to obligate indemnification for indemnitee's own negligence where clause stated: "The Lessee agrees to be responsible for any damage to the property . . . which may result from any use of the demised premises, or any act done thereon by Lessee . . . and will also save the Lessor harmless from any liability to any other person, for damage to person or property resulting from any such causes.").

The language we quoted from *Moore Heating* reflects the court's rationale but not the exact language of the provision at issue there, and NES maintains that the provision at issue in *Moore Heating* demonstrates why it should prevail. We disagree. The indemnity provision in *Moore Heating*, which the court found obligated Moore to indemnify for Huber's own negligence, states in relevant part:

> [Moore] agrees to indemnify [Huber] against and hold [Huber] harmless from any and all liability. . . from any claim or cause of action of any

nature arising while on or near the Job Site . . . and whether or not it is alleged that [Huber] in any way contributed to the alleged wrongdoing or is liable due to a nondelegable duty. It is the intent of the parties that [Moore] shall indemnify [Huber] under [this clause] to the fullest extent permitted by law, however, [Moore] may not be obligated to indemnify [Huber] for the sole negligence or willfull misconduct where such indemnification is contrary to law, but otherwise it is the intent of the parties that [Moore] shall indemnify [Huber] to the fullest extent permitted by law for such liability.

*Id.* at 144.

The *Moore Heating* provision contains a significant clause that NES's Rental Agreement did not: "whether or not it is alleged that [Huber] in any way contributed to the alleged wrongdoing or is liable due to a nondelegable duty." That provision contains explicit language making clear the obligation to indemnify for Huber's own conduct. *See Moore Heating*, 583 N.E.2d at 147. And it makes all the difference. No comparable provision exists here.

Similarly, the clause in *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 554 (Ind. Ct. App. 2003), contains clear and unequivocal language making clear the obligation to indemnify for the indemnitee's negligence. The clause there stated:

[Starnes] shall indemnify and hold harmless [GKN] . . . from and against all claims . . . arising

out of or resulting from the performance of the work, provided that such claim . . . is caused in whole or in part by any negligent act or omission of [Starnes] . . . *regardless of whether it is caused in part by a party indemnified hereunder.*

*Id.* at 550 (emphasis added). The *GKN* court ruled that the last part of the clause ("regardless of whether it is caused in part by a party indemnified hereunder") "clearly and unequivocally operated to alert Starnes to the burden it undertook." *Id.* at 553-55. There, again, a clause explicitly made clear that indemnification applied even if the damages were caused in part by the indemnified party.

That direct reference to conduct by the indemnitee present in *Moore Heating* ("whether or not it is alleged that [Huber] in any way contributed to the alleged wrongdoing or is liable due to a nondelegable duty") and *GKN* ("regardless of whether it is caused in part by a party indemnified hereunder") is missing in the NES Rental Agreement. Instead, the language is largely general: "any and all claims"; "for any and all bodily injury, property damage, or any other damages or loss"; "regardless of whether such injury, damage or loss is caused in whole or in part by negligence". The provision states that it covers "negligence" in a general sense, but it does not contain language making it explicit that it covers NES's own negligence.

The only reference to NES in the indemnification provision comes in its final words: "except where such injury, damage or loss is caused solely by the Company

[NES]." NES argues that this phrase is an explicit statement set within a broad indemnity clause requiring Steine to indemnify NES "for any and all claims" arising out of the use of the equipment, and that this "except" clause is explicit in establishing that Steine must indemnify NES whenever the triggering event involved concurrent or contributing acts of others. *Cf. Moore Heating*, 583 N.E.2d at 146 (stating words of a contract are not alone and that entire contract must be read together). The problem with this argument, however, is that the "except" clause does not make the obligation to indemnify for NES's own negligence explicit. Any obligation based on the "except" clause is only, at best, an implicit one. NES's argument is essentially that there is an implication from the provision's coverage of "any and all claims . . . caused in whole or in part by negligence" "except" those caused by NES's sole negligence that the provision covers NES's own negligence in instances when it was not the sole cause. Whatever appeal that argument may have, it is not enough under Indiana law, as the obligation to indemnify for the other party's own negligence must be "explicit." *See Moore Heating*, 583 N.E.2d at 146.

NES maintains, however, that case law demonstrates that the "except" clause is enough. It emphasizes in its brief a 1966 Indiana appellate court decision, *New York Central Railroad Co. v. Northern Indiana Public Service Company*, 221 N.E.2d 442 (Ind. Ct. App. 1966). The clause there stated:

> Sixth. Second Party (NIPSCO) shall and will at all times hereafter indemnify and save harmless

> First Party (NYC) from and against any and all detriment, damages, losses, claims, demands, suits, costs, or expenses which First Party (NYC) may suffer, sustain, or be subject to, directly or indirectly, caused either wholly or in part by reason of the location, construction, maintenance, use or presence of said Work as permitted by this license or resulting from the removal thereof, except such as may be caused by the sole negligence of First Party (NYC), its agents or employees.

*Id.* at 444.

In that case, the trial court found that the operator of the crane involved in the fatal accident was NYC's agent. *Id.* at 445. It also found that the death was caused by the sole negligence of NYC, acting through its agents and employees. *Id.* The question on appeal was whether the trial court erred in finding that the crane operator was NYC's servant, *id.* at 446, and the appellate court spent the bulk of its opinion addressing that question.

The final argument the appellate court addressed was NYC's argument that NIPSCO failed to maintain power lines at a sufficient height, and that this failure contributed to the accident. *Id.* at 451. The court rejected this argument and ruled that the evidence in the record demonstrated that the accident was caused by the sole negligence of NYC, its agents, or employees. *Id.* So the exception in the indemnity clause applied ("except such as may be caused by the sole negligence of First Party (NYC), its agents or employees"), and NIPSCO had no obligation to indemnify NYC. *Id.* As a result,

*New York Central Railroad* did not address the question here. Whether the indemnification clause required indemnification for NYC's own negligence in instances when it was not the sole cause was simply not at issue.

NES's reliance on *Penn Central Co. v. Youngstown Sheet & Tube Co.*, 253 N.E.2d 704 (Ind. Ct. App. 1969) similarly does not help it. As NES acknowledges, the indemnitor there made no effort to argue that the indemnity clause did not obligate it to indemnify the plaintiff in instances where the plaintiff's negligence was not the sole cause of an accident. The only question was whether the indemnification clause violated public policy, and the issue of indemnification for the indemnitee's own negligence was not litigated. *Id.* at 220-23.

NES also points to *Center Township of Porter County v. City of Valparaiso*, 420 N.E.2d 1272 (Ind. Ct. App. 1981). The clause there stated:

> That the City of Valparaiso, Indiana, its agents, departments, officials, and governing boards shall be held harmless from any and all negligence, misconduct, malfeasance or misfeasance resulting under its performance of this contract, whether or not caused by or resulting from the activity of the Fire Department or any other participating agency or department or official of the City of Valparaiso, Indiana. The City is not a guarantor nor an insurer of the lives and property of the said Center Township and is responsible and bound only to the good faith performance of the terms and obligations of this contract.

*Id.* at 1274. The court held that the provision "put the parties on notice that the indemnitor (Center Township) is liable for loss arising from the negligence of the indemnitee (City)." *Id.* at 1275. This result makes sense, as the clause explicitly stated it applied for all negligence whether or not caused by any City agency or official. The NES Rental Agreement lacks a comparable clause.

We noted many years ago that it is not unconscionable or illicit to contract for protection against one's own negligence, whether through insurance or indemnity. *Indem. Ins. Co. of N. Am. v. Koontz-Wagner Elec. Co.*, 233 F.3d 380, 383 (7th Cir. 1956) (applying Indiana law). Indeed, the Indiana courts do "not invalidate such clauses simply because they might provide broad protection for the indemnitee." *Ft. Wayne Cablevision v. Ind. & Mich. Elec. Co.*, 443 N.E.2d 863 (Ind. Ct. App. 1983). Rather, "[t]he policy of disfavor is directed at indemnification duties which the indemnitor did not knowingly assume." *Id.* The Indiana appellate court has explained:

> Our "judicial policy of disfavor" toward such clauses is grounded in the recognition that the obligation to insure another party against the costs of the other's own negligence is "so extraordinary and harsh . . ." with the "potential liabilities assumed . . . awesome" that a promisor would not lightly accept such a burden knowingly and willingly. . . .

*Ind. State Highway Comm'n v. Thomas*, 346 N.E.2d 252, 263 (Ind. Ct. App. 1976) (internal citations and quotations omitted). And unlike in many insurance settings, where

one has an incentive to act carefully at the risk of increased premiums, the indemnitee who will be indemnified for prospective acts of negligence generally lacks the same incentive.

In light of the way the Indiana appellate court decisions have construed indemnification provisions, our best prediction is that the Supreme Court of Indiana would conclude that the indemnification provision in the NES Rental Agreement does not evidence that Steine knowingly and willingly accepted the burden of indemnifying NES for NES's own negligence. *See Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 492 (7th Cir. 2011) (looking especially to more recent Indiana Court of Appeals decisions in deciding diversity case). That is, we think the Supreme Court of Indiana would agree with the district court that the Rental Agreement does not explicitly provide, "in clear and unequivocal terms," that Steine must indemnify NES for NES's own negligence, and so Steine has no obligation to do so.

Finally, NES contends on appeal that even if the district court viewed the language of the indemnity clause as insufficient to indemnify NES for its own negligence, the district court should have entered partial summary judgment in favor of NES on the basis that NES had alleged it incurred costs in its defense of the Menendez lawsuit. It maintains that Steine should indemnify it for any defense costs associated with defending itself, other than for its own negligence, in the Menendez lawsuit. The principal problem with this

contention is that NES never made this argument to the district court. "It is a well-established rule that arguments not raised to the district court are waived on appeal." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). NES filed memoranda both in support of its motion for partial summary judgment and in opposition to Steine's motion for summary judgment before the district court, but it never made the "costs of defense" argument it makes now. We do not consider it here.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.