

**FILED**

Jun 27 2016, 6:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven St. John
Skiles Detrude
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Francis A. Veltri
Travelers Staff Counsel
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BC Osaka, Inc. and City Inn, Inc., *Appellants-Petitioners,* v. Kainan Investment Groups, Inc.[1], *Appellee-Respondent.* | June 27, 2016 Court of Appeals Case No. 45A03-1510-CT-1587 Appeal from the Lake County Superior Court The Honorable William E. Davis, Judge Trial Court Cause No. 45D05-1403-CT-34 |

**Mathias, Judge.**

[1] Angelica Magallanes ("Magallanes") sustained personal injuries when she tripped and fell on a rod protruding from a cement bumper in the BC Osaka

---

[1] The parties refer to Appellee as "Kainan Investment Group, Inc." in the captions of their briefs, but review of the record reveals that the entity is called "Kainan Investment Groups, Inc."

restaurant parking lot. Magallanes filed a complaint against BC Osaka, Inc.[2] and City Inn, Inc. (collectively "Tenant") and Kainan Investment Groups, Inc. ("Landlord"). Landlord filed a cross-claim against Tenant and a motion for summary judgment, arguing that it was not liable to Magallanes based on the indemnity clause of the commercial lease agreement ("the Lease"). The trial court granted Landlord's motion. Tenant now appeals and argues that the trial court erred in granting Landlord's motion for summary judgment.

[2] We reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[3] On March 10, 2011, Tenant entered into the Lease with Landlord and Ji Guang Zheng as guarantor. The parties contracted for Tenant to lease a free-standing, single-story building and surrounding parking spaces from Landlord for purposes of operating an Asian-style restaurant.

[4] Magallanes met her family for a meal at BC Osaka in Merrillville, Indiana[3] on July 1, 2012. As Magallanes got out of her vehicle to walk into the restaurant, she tripped and fell on a rod sticking out of a cement bumper in the parking lot. Magallanes filed an amended complaint alleging personal injuries against Landlord and Tenant on June 2, 2014. Magallanes alleged that Defendants were responsible for maintaining and inspecting the parking lot and owed a

---

[2] BC Osaka is the trade name used by City Inn in the operation of the restaurant.

[3] Appellee's brief incorrectly states that the restaurant is located in Hobart, Indiana. See Appellee's Br. at 1; Appellant's App. p. 54.

duty of care to customers and invitees. She further alleged that Defendants breached this duty and as a result Magallanes was injured. Both Landlord and Tenant filed separate answers denying that they owed a duty to Magallanes and denying that its own negligence was the proximate cause of her injuries.

[5] On March 30, 2015, Landlord filed a cross-claim against Tenant, alleging that Tenant owed Landlord a contractual obligation to indemnify, hold harmless, and provide a legal defense against Magallanes's claims. Tenant filed an answer denying such an obligation on April 24, 2015. On June 8, 2015, Landlord filed a motion for summary judgment, and Tenant filed its response on July 24, 2015. The trial court held a hearing on Landlord's motion on August 27, 2015, and took the issue under advisement. On September 15, 2015, the court entered an amended order granting Landlord's motion for summary judgment and requiring Tenant to indemnify, hold harmless, and provide a legal defense to Landlord under the Lease. Tenant now appeals.

## Standard of Review

[6] Our standard of review of summary judgment appeals is well-established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. In answering these questions, the reviewing court construes all factual inferences in the nonmoving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of

> making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Once the movant satisfies the burden, the burden shifts to the nonmoving party to designate and produce evidence showing the existence of a genuine issue of material fact.

*Likens v. Prickett's Properties, Inc.*, 943 N.E.2d 816, 820 (Ind. Ct. App. 2011) (citations and internal quotations omitted).

### Covenant to Hold Harmless Provision

[7] When we review the trial court's interpretation of a contract, we view the contract in the same manner as the trial court. *GKN Co. v. Starnes Trucking, Inc.*, 798 N.E.2d 548, 552 (Ind. Ct. App. 2003) (citing *Exide Corp. v. Millwright Rigger, Inc.*, 727 N.E.2d 473, 478 (Ind. Ct. App. 2000), *trans. denied*). The court should attempt to determine the intent of the parties at the time the contract was made by examining the language used to express their rights and duties. *Id.* Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended. *Id.* Words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone. *Id.* The entire contract must be read together and given meaning, if possible. *Id.*

[8] In Indiana, a party may contract to indemnify another for the other's own negligence. *Hagerman Constr. Co. v. Long Elec. Co.*, 741 N.E.2d 390, 392 (Ind. Ct. App. 2000). However, this may only be done if the party knowingly and willingly agrees to such indemnification. *Id.* Such provisions are strictly

construed and will not be held to provide indemnification unless it is so stated in clear and unequivocal terms. *Id.* We disfavor indemnification clauses because we are mindful that to obligate one party for the negligence of another is a harsh burden that a party would not lightly accept. *Id.*

[9] Our court has adopted a two-step analysis to determine whether a party has knowingly and willingly accepted this burden. *Id.* First, the indemnification clause must expressly state in clear and unequivocal terms that negligence is an area of application where the indemnitor has agreed to indemnify the indemnitee. *Id.* The second step determines to whom the indemnification clause applies. *Id.* Again, in clear and unequivocal terms, the clause must state that it applies to the indemnification of the indemnitee by the indemnitor for the indemnitee's own negligence. *Id.*

[10] The Covenant to Hold Harmless of the Lease provides in relevant part:

> Tenant agrees to indemnify and save Landlord harmless against and from any and all claims, damages, costs, and expenses, including reasonable attorneys' fees, arising from the conduct or management of the business conducted by Tenant in the Leased Premises, or from any breach or default on the part of Tenant in the performance of any covenant or agreement on the part of the Tenant to be performed pursuant to the terms of this Lease, or from any act or negligence of Tenant, its agents, contractors, servants, employees, sub lessees, concessionaires or licensees in or about the Lease Premises. In case any action or proceeding be brought against Landlord by reason of such claim, Tenant, upon notice from Landlord, covenants to defend such action or proceeding by counsel reasonably satisfactory to Landlord.

Neither Landlord, nor Landlord's agents, employees, beneficiaries, officers, or directors shall be liable, and the Tenant waives and releases all claims for damage to person or property sustained by Tenant, or by Tenant's employees, agents, servants, invitees and customers, or by any other occupant of the building in which the Leased Premises are located, or by any other person, resulting from said Building or any part of it, or any equipment or appurtenance becoming out of repair, or resulting from any accident in or about the Leased Premises or said Building, or resulting directly, or indirectly, from any act or neglect of any other tenant or occupant of said Building, or of any other person. This Article shall apply especially, but not exclusively, to damage caused by refrigerators, sprinkling devices, air-conditioning apparatus, water, snow, frost, steam, excessive heat or cold, sewage, gas, odors, or noise, or the bursting or leading of pipes or plumbing fixtures, and shall apply equally whether any such damage results from the act or neglect of other tenants, occupants, or servants in said Building, or of any other person, and whether such damage be caused, or result from, any thing or circumstance above-mentioned or referred to, or any other thing or circumstance, whether of a like nature or of a wholly different nature. If any such damage result from any act or neglect of Tenant, Landlord may, at Landlord's option, repair such damage, whether caused to the building or to tenants thereof, and Tenant shall thereupon pay to Landlord the total cost of such repairs and damages, both to the building and to the tenants thereof.

Appellant's App. p. 73.

[11]     In this case, the indemnification provision includes: "Tenant agrees to indemnify and save Landlord harmless against and from. . . any act or negligence of Tenant." *Id.* Therefore, the clause states in clear and unequivocal

terms that negligence is an area of application where Tenant has agreed to indemnify Landlord and satisfies the first step of the analysis.

[12]     In applying the second step of the test, we must determine if the indemnification clause clearly applies to indemnification of Landlord by Tenant for Landlord's own negligence. In *Hagerman Constr. Co. v. Long Elec. Co.*, an injured employee of a subcontractor sued the general contractor and the general contractor filed a third-party indemnification claim against the subcontractor. 741 N.E.2d 390, 391(Ind. Ct. App. 2000). The indemnification clause in *Hagerman* provided:

> To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in [this paragraph].

*Id.* at 392-93. Our court held that the indemnification clause did not clearly and unequivocally state that subcontractor was to indemnify general contractor for its own negligent acts. *Id.* at 393.

[13] To contrast, in *GKN Co. v. Starnes Trucking, Inc.,* our court determined that the language of the indemnification clause did clearly and unequivocally state that subcontractor was required to indemnify general contractor for its own negligent acts. 798 N.E.2d 548, 553 (Ind. Ct. App. 2003). The indemnity provision in *GKN* provided:

> [Starnes] shall indemnify and hold harmless the Owner, the Architect Engineer, and [GKN] and their agents and employees from and against all claims, damages, causes of action, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the work, provided that such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself) including the loss of use resulting therefrom; and (2) is caused in whole or in part by any negligent act or omission of [Starnes] or any of his subcontractor's [sic], anyone directly or indirectly employed by any of them or for anyone for whose acts any of them may be liable, *regardless of whether it is caused in part by a party indemnified hereunder*.

*Id.* at 550 (emphasis added). The language in the *GKN* indemnity provision required subcontractor to indemnify general contractor even in situations where general contractor is negligent.

The language of the indemnity provision in this situation is analogous to the language of the provision in *Hagerman* because no clear and unequivocal language exists that would require Tenant to indemnify Landlord for Landlord's own negligence. The clause discusses that Tenant must indemnify Landlord for Tenant's own negligence but makes no statement related to negligence on the part of Landlord. Because the provision does not explicitly state that Tenant was required to indemnify Landlord for its own negligent acts, we conclude that it is inapplicable here. *See Hagerman*, 741 N.E.2d at 393.

## Landlord's Possession and Control of Parking Areas

Even if we concluded that the indemnity provision of the Lease might be applicable, Landlord expressly reserved the right to control and maintain parking areas. As a general rule, in absence of statute, covenant, fraud or concealment, a landlord who gives a tenant full control and possession of the leased property will not be liable for personal injuries sustained by the tenant or other persons lawfully upon the leased property. *Pitcock v. Worldwide Recycling, Inc.,* 582 N.E.2d 412, 414 (Ind. Ct. App. 1991) (citations omitted). Further, a landlord is held liable for rented premises inasmuch as those premises contain common areas or the landlord assumes responsibility for the premises under the lease or by operation of law. *Olds v. Noel*, 857 N.E.2d 1041, 1047 (Ind. Ct. App. 2006). Otherwise and to the extent that a landlord has transferred control and possession of the premises to a tenant, the tenant is liable. *Id.*

[16]    In the Lease, Landlord retained rights and authority to the premises, specifically the parking areas. Article VI of the Lease provides in relevant part:

> The Premises and facilities provided by Landlord, and forming a part of said Building as constituted from time to time, shall be available to the tenant, their employees, agents, customers and invitees, *subject to the following*:
>
> (a) The right of the Landlord to substitute, from time to time, for any parking area or part thereof, other parking space substantially equal to or greater in area, and reasonably accessible to the tenants of said Building and their employees, agents, customers and invitees.
>
> ***
>
> (c) Landlord reserves the right at any time, and from time to time, without incurring liability to Tenant and without constituting an eviction, to change the appearance size, composition, number, arrangement or location of the public entranceways, doors, doorways, loading docks, and other portions of said Building as Landlord in its sole discretion deems necessary or desirable, except for the Leased Premises.
>
> For the good and welfare of the tenants in said Building, their employees, agents, customers, and invitees, Landlord expressly reserves the right to determine the manner in which said Premises shall be maintained and to promulgate reasonable rules and regulations relating to their use.
>
> ***
>
> Landlord may, from time to time, provide parking areas outside of said Building for the use of Tenant of said Building, their

employees, agents, customers and invitees, but all outside parking areas shall be subject to withdrawal at any time by the Landlord. The rules and regulations relating to the use of Premises within said Building shall likewise apply to the parking areas outside of the Building. Tenant shall also pay, as additional Rental and in a similar manner, the entire amount of the cost pertaining to the Premises within said Building of all costs incurred in the operation, maintenance, repair and improvement of said Outside Parking Areas, including, but without limiting the generality of the foregoing, the cost of fencing, paving, snow removal, landscaping maintenance, and replacement, rentals and other expenditures pertaining to said Parking Areas outside the Building, all as determined by Landlord from time to time.

Appellant's App. pp. 65-67 (emphasis added).

[17]     Article XV of the Lease further states:

Landlord reserves the right to designate specific parking areas for the use of Tenant and its employees from parking solely, or in conjunction with, other tenants and their employees, and to restrict Tenant and its employees from parking areas designated for customers. Tenant and its employees shall park their automobiles only in areas designated by Landlord, from time to time, either in the parking areas forming a part of said Building or parking areas outside of said Building. Landlord shall have the right to have the automobiles of Tenant, or of any of its agents or employees, removed from any area that is not designated by Landlord for the parking thereof, or to take any other action to effect such removal and to charge Tenant, as additional Rental, for all expenses in connection with such removal.

Appellant's App. p. 73.

[18] Thus, pursuant to the Lease, Landlord expressly reserved the right to determine how the parking areas should be maintained, establish rules related to the use of parking areas, change the designated parking areas, withdraw parking areas from Tenant at any time, and remove Tenant's automobiles from any area not designated for parking by Landlord. At the very least, these provisions create an issue of material fact as to whether Tenant had full control and possession of the leased premises. As such, the issue of Landlord's liability to Magallanes should not be disposed of on summary judgment.

## Conclusion

[19] Because the Lease's indemnification provision did not state in clear and unequivocal terms that Tenant would indemnify Landlord for Landlord's own negligence, we cannot conclude that the clause is applicable here. Further, Landlord reserved specific rights to possess and control parking areas in the Lease. For all of these reasons, a genuine issue of material fact exists whether Landlord is liable to Magallanes for her injuries. The trial court erred by granting Landlord's motion for summary judgment and ordering Tenant to indemnify, hold harmless, and provide a legal defense to Landlord. We therefore reverse and remand with instructions for the trial court to hold a jury trial on the matter.

[20] Reversed and remanded for proceedings consistent with this opinion.

Vaidik, C.J., and Barnes, J., concur.